STATE

v.

Jose TORRES.

No. 86–205–C.A.

Supreme Court of Rhode Island.

May 5, 1987.

James E. O'Neil, Atty. Gen., Jane McSoley, Thomas Dickinson, Asst. Attys. Gen., for plaintiff.

William Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal from the denial of his motion to dismiss a criminal complaint charging him with the unlawful possession of a controlled substance. The defendant had moved for dismissal on the ground that

further prosecution of the complaint after a trial justice's sua sponte declaration of a mistrial would place him in jeopardy twice for the same offense. We agree and reverse. The facts surrounding the proceeding to which jeopardy attached are as follows.

On October 22, 1985, defendant, Jose Torres, was brought to trial on a criminal information charging him with possession of cocaine in violation of G.L.1956 (1982 Reenactment) § 21–28–4.01(C)(1)(a). A jury was impaneled and sworn. To permit counsel to raise matters that required resolution before progressing to opening statements, the trial justice excused the jury from the courtroom immediately after its impaneling.

Upon a defense motion the trial justice ordered the sequestration of witnesses. Subsequently, the prosecutor asked the trial justice to exempt the investigating officer from the order so that he could assist the prosecutor during trial as well as testify. After the trial justice granted the prosecutor's request, defense counsel sought a similar exemption for Torres's wife on the ground that she was needed at counsel table to facilitate communication with Torres, whose command of English, though adequate under normal conditions, would most likely be challenged by the "hushed tones" spoken at the table.

The prosecutor objected, arguing that the defense should utilize an independent interpreter. Defense counsel countered with an offer to stipulate the conditions under which Mrs. Torres would testify in order to ensure that her presence in the courtroom would not influence her testimony. To support his request for Mrs. Torres's assistance, defense counsel explained that he had just discovered that morning that the interpreter normally employed by the public defender's office was unavailable because of a recent death in her family. Admonishing defense counsel for failing to raise the anticipated problem before jury selection, the trial justice found the defense offer insufficient to overcome the prosecutor's objection.

Thereafter, defense counsel waived the right to call Mrs. Torres as a witness and requested permission for her to act as an interpreter. The prosecutor renewed his objection, adding that the marshals preferred an official interpreter since Torres was held for want of bail.[1] Again suggesting that lack of foresight by defense counsel generated the emergent need for an interpreter, the trial justice ordered defense counsel to arrange immediately for an official interpreter or elect to go forward without one. A five-minute recess was called.

When court reconvened, defense counsel reported that although an official interpreter was not immediately available, one would be present in court the following morning. Proposing that trial proceed for the duration of the afternoon, defense counsel again waived the right to call Mrs. Torres as a witness and requested permission for her to act as an interpreter. The trial justice denied the request, expressing a concern that an unofficial interpreter might not be reliable and any ensuing confusion might provide grounds for postconviction relief. Instead of enforcing his previous order to proceed, the trial justice decided to delay trial for the interpreter's arrival so as to avoid any future question concerning Torres's comprehension of the proceeding. In announcing a recess until morning, the trial justice again chided defense counsel for causing a waste of time and money as the jury sat idle. Defense counsel explained that he had assumed that Mrs. Torres could act as an interpreter for the limited purpose of facilitating communication at counsel table. He further noted that Torres would not testify that afternoon and thus would not require the assistance of an interpreter to be understood by the jury. Defense counsel then asserted that, in his view, he was ready to proceed with trial.

At that point the prosecutor informed the trial justice that one of the testifying offi-

---

**1.** The marshals's objection was based upon the fact that the wife acting as interpreter would sit beside defendant at counsel table, thus posing a security risk.

cers would not be available to testify in the morning because of a "babysitting problem." Without exploring possible solutions to that problem and without warning, the trial justice declared a mistrial sua sponte on the ground that lack of defense preparation left no alternative. The jury was brought into the courtroom and discharged.

Prior to retrial Torres filed a motion to dismiss on the ground that further prosecution would subject him to double jeopardy. Acknowledging that jeopardy attached as soon as the jury was impaneled and sworn, the motion justice ruled that double-jeopardy prohibitions did not compel the trial justice to continue the trial with concerns that the potential communication problem could threaten the effectiveness of counsel. Accordingly, the motion justice refused to dismiss the information. Thereafter, Torres filed this interlocutory appeal.

■ The question before us is whether the double-jeopardy clause of the Fifth Amendment to the United States Constitution prohibits retrial. We are constrained to hold that it does.[2]

■ Among the complex of rights granted by the double-jeopardy clause of the Fifth Amendment is the right to have a trial completed by the particular tribunal initially summoned to sit in judgment. *E.g., Oregon v. Kennedy,* 456 U.S. 667, 671–72, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416, 422 (1982); *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717, 727 (1978); *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949). To protect that right, a defendant is deemed to be in jeopardy for an offense the moment a jury is impaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 35–36, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24, 31–32 (1978). If the defendant subsequently moves for a mistrial, it is assumed, in the absence of prosecutorial or judicial conduct intended to provoke the motion, that the defendant is deliberately relinquishing the right to proceed before

that jury and a bar to retrial will not be raised upon the granting of the motion. *Oregon v. Kennedy,* 456 U.S. at 675–76, 102 S.Ct. at 2089, 72 L.Ed.2d at 424–25. On the other hand, if the trial justice subsequently declares a mistrial without the defendant's request or consent, the right to retain the chosen jury is implicated and a bar to retrial will be raised unless the mistrial is declared under a strict standard first enunciated by Justice Story in 1824:

"[T]he law has invested Courts of justice with the authority to discharge [without barring retrial] a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject * * *. [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes * * *." *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165 (1824).

The full thrust of the "manifest-necessity" doctrine did not become apparent for nearly 140 years. In *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), the Court indicated for the first time how stringent and uncompromising the application of this doctrine would be.

In *Downum* a federal district judge had set down twelve cases for trial on relatively short notice. More than 100 witness subpoenas were issued. Downum's case was number 10 on the list, and the prosecution did not believe that it would be reached by Tuesday, the second day of hearings for the week. The prosecutor had learned only one day before the day the case was brought up for trial that one of his witnesses had not been reached. He had been trying another case that morning and was unable to check with the marshal who served the subpoena.[3] After the case was

---

2. Our finding that the United States Constitution prohibits retrial disposes of any need to consider Torres's additional assertion that the Rhode Island Constitution prohibits retrial.

3. The factual details surrounding the unavailability of the prosecution witness are taken in large part from Justice Clark's dissent. These

called for trial, a jury was impaneled, sworn, and instructed to return at 2 p.m. At the commencement of the afternoon session, the prosecution requested that the jury be dismissed because a key witness on two counts of the indictment was not available. Defense counsel moved that these counts be dismissed and that the trial proceed on the remaining counts. The court overruled the defense motion and discharged the jury over the defendant's objection. Two days later a second jury was impaneled, whereupon the defendant pleaded the bar of double jeopardy. This plea was rejected by the trial judge. The rejection was affirmed by the Court of Appeals.

Like a thunderclap a ringing declaration was made for the majority by Justice Douglas. Generally tracking the language of Justice Story in *Perez*, Justice Douglas stated that the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may only be subordinated to the public interest when there is an "imperious necessity" to do so.[4] He reiterated that the discretion to discharge a jury is to be exercised only in extraordinary and striking circumstances. *Downum*, 372 U.S. at 736, 83 S.Ct. at 1034, 10 L.Ed.2d at 102.

Applying this stringent principle to the facts in *Downum*, Justice Douglas attributed the absence of the witness to failure of the prosecution to ensure his presence. This was insufficient reason to meet the standard of imperious necessity.

Torres contends that the mistrial was improperly declared under the manifest-necessity standard and that as a consequence retrial is barred. In effect, this contention poses two questions for our determination: whether an application of the standard is warranted, and if so, whether the trial justice abused his discretion in applying the standard.

In response to the first question, we hold that under the instant facts the manifest-necessity standard is the proper

measure of double-jeopardy protection that must be extended to Torres. Absent a defendant's request or consent, the standard is applicable even though the trial justice, in declaring the mistrial, was motivated by a desire to protect the defendant's rights and was therefore, in effect, conferring a benefit upon the defendant. *See United States v. Jorn*, 400 U.S. 470, 482–83, 91 S.Ct. 547, 556, 27 L.Ed.2d 543, 555 (1971) (plurality opinion) (declining to restrict application of manifest-necessity test with appellate assessment of which party trial justice intended to protect and which party in fact benefited from mistrial). In a similar vein, the fact that a mistrial was predicated upon an error committed by the defense does not avoid an application of the standard. *See Arizona v. Washington*, 434 U.S. at 516, 98 S.Ct. at 835–36, 54 L.Ed.2d at 734–35 (showing of manifest necessity required for mistrial based upon improper comment of defense counsel). Although a formal objection to a declaration of mistrial clearly establishes lack of consent, the failure to object does not foreclose the defendant from raising the standard as a bar to retrial, at least in those cases in which the trial justice acted so precipitately as to preclude an opportunity to object and consent is not otherwise demonstrated. *See United States v. Jorn*, 400 U.S. at 487, 91 S.Ct. at 558, 27 L.Ed.2d at 558 (failure to object in midst of abrupt declaration of mistrial did not imply consent).

On the record before us, Torres neither expressly requested nor consented to the mistrial. Rather he apparently sought to promote the trial's progression by attempting to resolve the controversy surrounding his request for his wife to assist with communication at counsel table. Within that context his failure to arrange for an interpreter, even if engendering a concern for the effectiveness of counsel and serving as a catalyst for the declaration of mistrial, cannot be construed as a request for or

---

facts were not challenged by the majority, though not set forth in their opinion.

4. "Manifest necessity" and "imperious necessity" are regarded as synonymous terms. *Arizona v. Washington*, 434 U.S. 497, 505–06 n. 17, 98 S.Ct. 824, 830 n. 17, 54 L.Ed.2d 717, 728 n. 17 (1978).

consent to mistrial. Nor can his failure to object after the trial justice's abrupt and unanticipated declaration of mistrial be viewed as acquiescence in the ruling. Accordingly, the mistrial cannot be said to have been declared at Torres's behest. We turn, therefore, to the question of whether the sua sponte declaration was manifestly necessary.

Although Justice Story formulated the manifest-necessity standard within the context of a mistrial premised upon the jury's inability to reach a verdict, the Supreme Court has applied the standard in a wide variety of factual situations. *See, e.g., Arizona v. Washington,* 434 U.S. at 516, 98 S.Ct. at 835, 54 L.Ed.2d at 734 (possible juror bias created by improper comment of defense counsel); *Illinois v. Somerville,* 410 U.S. 458, 468, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973) (defective indictment not curable by amendment under state law); *United States v. Jorn,* 400 U.S. at 487, 91 S.Ct. at 558, 27 L.Ed.2d at 557–58 (protection of constitutional rights of witnesses); *Downum v. United States,* 372 U.S. at 736–37, 83 S.Ct. at 1034–35, 10 L.Ed.2d at 102–03 (unavailability of prosecution witness). In so doing, the Court has consistently declined to mold the standard into a mechanical rule that categorizes circumstances permitting or prohibiting retrial, preferring instead to enunciate a general standard to guide trial justices who must render decisions within trial situations that are often elusive and unique. *Illinois v. Somerville,* 410 U.S. at 462, 93 S.Ct. at 1069, 35 L.Ed.2d at 429.

■ To ensure that a trial justice's decision to mistry a case is tempered by the defendant's right to complete the trial before the chosen jury, the Court has imposed an obligation upon appellate courts to satisfy themselves that the trial justice scrupulously exercised a sound discretion in declaring the mistrial. *Arizona v. Washington,* 434 U.S. at 514, 98 S.Ct. at 835, 54 L.Ed.2d at 733. At a minimum an adequate exercise of discretion would require a record that evinces a concern for the consequences of a mistrial unnecessarily declared and that demonstrates that the court has considered viable alternatives to mistrial. Such a record would support the conclusion that the trial justice carefully balanced the defendant's right to proceed before the chosen jury with society's interests in fair trials and criminal-law enforcement. *See id.* at 515–16, 98 S.Ct. at 835, 54 L.Ed.2d at 734; *United States v. Jorn,* 400 U.S. at 486–87, 91 S.Ct. at 558, 27 L.Ed.2d at 557.

■ Although couching the trial justice's decision to grant a mistrial in terms of discretion, the Court's teachings since *Downum* have so circumscribed the ability to declare a mistrial without the defendant's consent that the act could scarcely be considered discretionary. Only the most compelling circumstances, which have rarely been found by the Court since 1963, can justify a termination of a defendant's right to complete the trial.

Applying the foregoing principles of review, we are of the opinion that the trial justice did not establish an imperious or manifest necessity in discharging the jury. Our reading of the record reveals that the trial justice labored under three concerns before declaring the mistrial: judicial economy, Torres's potential communication problem, and absence of a prosecution witness. In the circumstances of this case, none of these concerns manifestly required the mistrial.

■ Although the Supreme Court has acknowledged that crowded calendars impose a constant pressure on trial justices to conclude proceedings promptly and thus may add support to a finding of manifest necessity, *see Arizona v. Washington,* 434 U.S. at 516 n. 35, 98 S.Ct. at 835–36 n. 35, 54 L.Ed.2d at 734–35 n. 35, the potential length of any continuance that might be required to resolve the problems at hand did not warrant the jury's dismissal. The communication problem was resolved with a continuance that merely extended from midpoint in the court's afternoon session to the next morning, a loss of only a few hours. The record is devoid of any indication that the witness problem required a continuance, given that the prosecution had other witnesses to call, or if it did require a

continuance, that the continuance would be lengthy.

Although the trial justice was well within his discretion to determine whether Torres's language difficulty threatened the administration of a fair trial, it is far from clear that Torres's imperfect command of English was of a sufficient magnitude to threaten the effectiveness of counsel, the right to confront witnesses, or Torres's ability to testify free of error. In any event the problem was resolved by delaying trial until the interpreter's arrival in the morning. With the resolution of the communication problem, nothing in the record suggests that the effectiveness of counsel was otherwise threatened.

The problem that precipitated the declaration of mistrial was the unavailability of a prosecution witness. Declining to rule that the absence of a witness could never justify the termination of a trial, the Supreme Court in *Downum*, 372 U.S. at 737, 83 S.Ct. at 1035, 10 L.Ed.2d at 103, advised that each case must turn on its facts. As previously discussed, the Court found that the facts in *Downum* did not justify the discharge of the jury and that the second trial of the defendant constituted double jeopardy.

Like the Court in *Downum*, we find that the facts surrounding the unavailability of the prosecution's witness did not warrant the discharge of the jury. Because the reason for the witness's absence was minor and on its face easily resolvable within a brief period, the trial justice's act of declaring a mistrial without exploring the feasibility of less drastic but viable alternatives is clearly erroneous. As noted before, it is entirely possible that the prosecution could have proceeded in the morning by calling other witnesses, or if not, it is also entirely possible that the absent witness could have been available within a day.

Having determined that the mistrial was improperly declared under the manifest-necessity standard, we hold that further prosecution would violate the imperative ban against double jeopardy.

For the foregoing reasons the defendant's appeal is sustained and the judgment below reversed. The papers in the case may be remanded to the Superior Court.