**STATE**

v.

**William A. FISKE, Sr.**

**No. 86–399–C.A.**

Supreme Court of Rhode Island.

June 9, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Jaine M. McSoley, Asst. Atty. Gen., Providence, for plaintiff.

William Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Providence, for defendant.

## OPINION

KELLEHER, Justice.

Recently in *State v. Torres,* 524 A.2d 1120 (R.I., 1987), this court noted that the constitutional protection against double jeopardy attaches once the jury in a criminal case has been impaneled and sworn. The court went on to emphasize that a subsequent declaration of a mistrial by a trial justice, absent the defendant's request or consent and absent proof of a manifest necessity for such a determination, bars the defendant's retrial. Consequently in *Torres,* since there was no showing of a

manifest necessity or evidence of the defendant's acquiescence or request for such a declaration or ruling, any further retrial of Torres was barred by the constitutional bar against double jeopardy.

History is about to repeat itself in this appeal in which the defendant, William A. Fiske, Sr. (Fiske), challenges the denial by a Superior Court justice of his motion that an indictment charging him with three counts of sexual assault be dismissed on the grounds that a mistrial declaration by another Superior Court justice barred a second trial.

The victim of the alleged assaults was Fiske's stepdaughter. She was thirteen at the time in question and had lived with her mother and Fiske in Providence. The record indicates that the jury considering these charges was impaneled on February 12, 1986, and that on the following day the stepdaughter began to testify. Cross-examination began shortly after the usual morning recess at about 11:22 a.m. The luncheon break began at about 12:30 p.m., and cross-examination was resumed at approximately 2 p.m.

The defense sought to impeach the teenager's testimony by suggesting that by lodging her charges against Fiske, she hoped to be removed from her Providence residence by the appropriate authorities and taken to the town of Johnston where she would then live with her biological father and his spouse.

During the cross-examination it was revealed that the teenager had in fact moved to Johnston and taken residence with her biological father and his new wife. However, matters did not go well between the daughter and her biological father. In fact, she lodged charges against the biological father that were similar to those that she had levied against Fiske.

When testimony concluded for the day, it was approximately 4 p.m. The jury was excused. Fiske's counsel then made an offer of proof in which he offered to show that the records of various agencies such as the Department of Children & Their Families (DCF) and Bradley Hospital (Bradley) would reveal that the teenager, when-

ever confronted with a situation in which her conduct would come under parental scrutiny, would become manipulative and indulge in the same types of accusations she had lodged against Fiske. The offer of proof is set out on about eight full pages of transcript; the state's response covered another three pages. When defense counsel sought to reply to the state's response, he was told that he could be heard on the following morning.

The next day was Friday, February 14, 1986—Valentine's Day. In responding, defense counsel asserted that all his claims could be verified by an examination of the sealed documents presently in the court. The state again gave a response. The trial justice then remarked that the defense had proven that the thirteen-year-old did not like to be regulated in any way, but the trial justice went on to comment that the matters the defense sought to go into were "irrelevant" and any further testimony "as to all of her elopements and subsequent activities" would be pointless.

Defense counsel then brought to the court's attention the fact that earlier in the morning the prosecution had provided him with supplemental discovery that listed as an anticipated witness the biological father. Defense counsel asserted that he had absolutely no idea what the father would testify to other than what was contained in the records of DCF or Bradley that, as he noted, were under seal. Defense counsel also further explained that he was not prepared to cross-examine the biological father because he did not know what the proposed witness would say on direct examination. Consequently, he asked either that the state be barred from calling the father or that, if the court did not impose such a sanction, he "be given a reasonable amount of time" after the state provided him with the discovery material "so that I may prepare my cross-examination."

The state's counsel took a contrary position but did concede that in fact she had no objection to giving the defense more time. At this juncture, the trial justice remarked that "[h]e can have all of the time he wants. I am going to pass the case. I am

going to let someone else try it. Here is the file, Mr. Clerk."

The record indicates that the court recessed at 10:21 a.m. Within twenty minutes of the declaration of the mistrial, Fiske's counsel filed a written notice of his lack of consent to the mistrial. When counsel made an inquiry about the jury and the trial justice's whereabouts, he was told that the jury had gone "home" and the trial justice had left the "bench." Later in the day defense counsel filed a motion seeking dismissal of the case based on the double-jeopardy provisions of both the Federal and the State Constitutions.

When Fiske's dismissal motion came on for a hearing, a second Superior Court justice commented that the "necessity" for the "mistrial declaration" was precipitated by the "trial strategy embodied by defense counsel." He also emphasized that the first trial justice, in declaring a mistrial, had invoked a remedy provided by Rule 16(i) of the Superior Court Rules of Criminal Procedure. Admittedly, Rule 16(i) contained several sanctions that may be imposed for one's failure to provide the appropriate information. The trial justice may grant a continuance or bar the party from presenting the material or the testimony of a witness whose identity or statement was not disclosed, or "enter such other order as he deems appropriate." However, in *State v. Coelho*, 454 A.2d 241, 245 (R.I.1982), we pointed out that this discretion is limited and is subject to review by this court. Again, in *State v. Darcy*, 442 A.2d 900, 902 (R.I.1982), it was also stressed that this particular discretion must be consistent with the constitutional guarantees.

In *Torres* reference was made to *Arizona v. Washington*, 434 U.S. 497, 514, 98 S.Ct. 824, 835, 54 L.Ed.2d 717, 733 (1978), where it was pointed out that an appellate court is obligated to satisfy itself that the trial justice "scrupulously exercised a sound discretion in declaring the mistrial." A minimum adequate exercise of discretion requires a record that demonstrates the concern for the consequences of an unnecessarily declared mistrial and demonstrates that the trial justice has exercised viable alternatives to such drastic action. Here the record is crystal clear that Fiske's trial counsel did not in any way acquiesce to the declaration of the mistrial, and it is equally obvious that there was no manifest necessity to discharge the jury.

The request for an opportunity to examine the records as they relate to the biological father's proposed testimony came on Friday morning, February 14, 1986. When the court had recessed on the preceding day, the trial justice announced that the court would be in recess until 9:30 the following morning. On that morning, Friday, February 14, the mistrial was declared at 10:21 a.m. If we assume that the trial began punctually at 9:30, the total time the judge was on the bench was fifty-one minutes. At no time was any consideration given to recessing the trial over the weekend, a period that would have given the prosecution and the defense the opportunity to resolve the impasse so that on Monday morning the trial could proceed.

Again in *Torres* even though we noted that the grant of a mistrial is couched in terms of discretion, pronouncements of the United States Supreme Court had made it clear that only the most compelling circumstances could justify the termination of an accused's right to complete his or her trial. The record is bare of any such circumstances. The absence of such a manifest necessity—the trial justice's declaration of the mistrial without consideration of the feasibility of less drastic but viable alternatives—cannot be upheld. Any further prosecution of this defendant for the charges set forth in the three-count indictment is barred by the constitutional ban against double jeopardy.

This court is well aware of the heavy responsibilities imposed upon a trial justice, particularly when he or she is involved in a trial of a criminal case; however, we would remind such justices that when the issue that comes before the court concerns a potential mistrial or the passing of a criminal case when the jury has been impaneled and sworn, consideration must be given to whether the termination is sought by the

defense as well as the presence or absence of a "manifest necessity" and a consideration of the alternative remedies.

The defendant's appeal is sustained, the judgment of the Superior Court is vacated, and the case is remanded to the Superior Court for the entry of a judgment dismissing the indictment.