STATE

v.

Sergio SANCHEZ.

Nos. 86–320–C.A., 86–367 M.P.

Supreme Court of Rhode Island.

May 16, 1988.

**456** ■ ▬▬▬▬▬▬

Barbara Hurst, Asst. Public Defender, for plaintiff.

James O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., for defendant.

## OPINION

KELLEHER, Justice.

This case first came before us on oral argument in October 1987 pursuant to an appeal taken by the defendant from the denial of his motion to dismiss a murder indictment on the ground that a trial of the indictment would violate the prohibition against double jeopardy found in the Fifth Amendment of the United States Constitution and article I, section 7, of Rhode Island's Constitution.

The defendant's double-jeopardy claim is based upon an incident that occurred on July 3, 1985, when he was on trial on the murder charge. On that day the trial was at its final stage. The charge had been given to the jury, and the jurors had retired to deliberate. Shortly after the deliberations began, one of the jurors complained of feeling ill and asked to speak to the trial justice. In the trial justice's chambers, the juror complained to the justice of dizziness and blurred vision. At the conclusion of this discussion which took place in the ab-

sence of counsel for the state and the defense, the trial justice expressed the belief that the juror could not take any further part in the deliberations of the case. Since the defendant was unwilling to proceed with eleven jurors, the trial justice declared a mistrial and continued the case for retrial.

Earlier, in *State v. Sanchez*, 532 A.2d 956 (R.I. 1987), we remanded this case to the Superior Court for an evidentiary hearing concerning the juror's physical condition during the period immediately following his excusal and for a reasonable time thereafter. The remand hearing was conducted in December 1987 before another Superior Court justice, who made certain findings relating to the juror based upon the juror's testimony and that of his personal physician. A police officer who apparently was involved with the prosecution of this case drove the ailing juror to his car, which was parked in Cranston. The juror left the police car and entered his own vehicle and drove home, a distance of one-half mile. This remand justice made the following findings of fact: (1) the juror did not consult any physician until July 7, 1986, a year after the mistrial; (2) when the juror arrived home, he took no medication; (3) the juror lay down for a few hours; and (4) the juror continued to take it easy for the rest of the day. The remand justice, after making these findings of fact, expressed the belief that evidence indicated that the juror would have been able to resume deliberations with a few days' rest. The juror became ill on Wednesday, July 3, 1985.

In *State v. Torres*, 524 A.2d 1120 (R.I. 1987), and later in *State v. Fiske*, 526 A.2d 1273 (R.I.1987), we emphasized that the excusal of a juror after jeopardy has attached is a violation of the constitutional guarantee against double jeopardy. Both in *Fiske* and in *Torres* we pointed out that the constitutional protection against double jeopardy attaches once a jury in a criminal case has been impaneled and administered the oath. Any subsequent declaration of a mistrial bars any retrial of a defendant unless the defendant (1) requests or con-

sents to the declaration or (2) the record reveals the presence of a manifest necessity which requires that the trial come to a halt. It is obvious that the trial justice at no time gave any consideration to these contingencies in declaring the mistrial. As noted earlier, the mistrial was declared on Wednesday, July 3, 1985. Of course, the next day was July 4, a national holiday. The next trial date would be Friday, July 5. However, the trial justice neglected to give "concern for the consequences of an unnecessarily declared mistrial" and failed to give consideration to any "viable alternatives to such drastic action." *Fiske*, 526 A.2d at 1273. One alternative which was not pursued was affording all concerned with an opportunity to enjoy what might best be described as a long holiday weekend by continuing the case to Monday, July 8, 1985 at which time an updated report could be obtained as to the juror's condition. The remand hearing clearly indicates that there was a strong possibility that the juror could have returned to his duties after a few days away from the courthouse. In *Torres*, 524 A.2d at 1123, we describe the doctrine of manifest necessity as "stringent and uncompromising." Since the record before us is barren of any evidence of a manifest necessity that would have justified the declaration of a mistrial, the constitutional prohibition against double jeopardy bars any retrial of Sanchez on the murder charge which was lodged against him on July 8, 1983.

The defendant's appeal is sustained, and the case is remanded to the Superior Court with the directions to dismiss the indictment which gave rise to this controversy.