205 So.2d 530 (1967)
Dorothy ADKINS, Petitioner,
v.
D.C. SMITH, Circuit Judge of the Ninth Judicial Circuit in and for Indian River County, Florida, Respondent.
No. 36484.
Supreme Court of Florida.
December 19, 1967.
Rehearing Denied January 16, 1968.
Walter T. Erickson, Vero Beach, for petitioner.
Earl Faircloth, Atty. Gen., and James T. Carlisle, Asst. Atty. Gen., for respondent.
*531 ROBERTS, Justice.
The petitioner brings here for review a decision of the District Court of Appeal, Fourth District, which denied a writ of prohibition sought to abate the prosecution of petitioner for first dergee murder. The historical background and questions presented are set forth in the opinion of the District Court reported in Adkins v. Smith, 197 So.2d 865, as follows: 
"Dorothy Adkins petitions this court for a rule absolute to prohibit further proceedings by the respondent in the circuit court in the prosecution of petitioner for first degree murder.
"Petitioner was indicted for first degree murder and brought to trial before the respondent, Circuit Judge D.C. Smith. A jury of twelve and one alternate juror were selected and sworn. The judge declared a recess and directed the jury to withdraw into the jury room. As the jurors were going into the jury room the alternate juror approached the bench and spoke briefly to the judge. The subject of the conversation was the concern of the juror over the possibility of being separated from his ill wife overnight with no one available to care for her. Immediately prior to this conversation between the alternate juror and the judge, defendant had left the courtroom and was in the hallway outside the courtroom. Defense counsel was present.
"At this point the state attorney pointed out to the court that the defendant was not present during the conversation between the court and the alternate juror and because of the recent case, Deans v. State, Fla.App. 1965, 180 So.2d 178, consideration should be given to the declaration of a mistrial.
"After considerable discussion between the court and both counsel concerning the Deans case, the court inquired whether defense counsel would stipulate that the alternate juror be discharged. The court stated that, unless there was such a stipulation, the court would give consideration to a declaration of a mistrial.
"The state attorney indicated a willingness to so stipulate. The defense counsel suggested that the state attorney might move for a mistrial. The state attorney stated he would make such a motion if the court felt it necessary in the furtherance of justice. The counsel for the defendant responded to the court's request for comment on such a motion by saying `No, sir. That motion is in the record.'
"The court thereupon on its own motion declared a mistrial and discharged the jury.
"The defendant then filed a motion to quash the indictment on the grounds that the discharge of the jury before verdict, without the consent of the defendant, for a reason legally insufficient and without necessity amounted to an acquittal and constituted a bar to the further trial or subsequent prosecution of defendant for the same offense. The court denied the motion to quash and set a date for the trial of defendant upon the same indictment."
The District Court then proceeded to hold there was no proper basis for the entry of the mistrial, but that petitioner (defendant in the murder case) could not complain since the overall circumstances "clearly manifest defendant's willingness to accept the declaration of a mistrial and thereby constituted sufficient consent to preclude petitioner from raising the defense of double jeopardy in her subsequent prosecution on the same indictment." Thus, this court is presented with the following two points involved: 
"1. Whether petitioner's counsel's statement to the state attorney that `You might even move for a mistrial' and his response to the court that he had nothing to say on a motion for mistrial *532 amounted to a consent to the declaration of a mistrial?
"2. Whether, after jeopardy has attached, the declaration of a mistrial because of the occurrence of an event, beyond the control of the court or counsel, sufficient to give the trial court reasonable grounds to believe that such occurrence would require a reversal if the trial proceeded, constitutes grounds for double jeopardy upon a retrial?"
As to the first point, we are in accord and approve the holding of the appellate court below that the conduct of petitioner was sufficient to preclude petitioner from raising the defense of double jeopardy in any subsequent prosecution.
As to the second point, we conclude that it was error for the appellate court below to hold that the trial court, under the circumstances present in this case, improperly entered a judgment of mistrial. At the outset it is noteworthy that the prisoner, with her counsel's consent, set in motion the circumstances by having walked out of the courtroom and into the hall immediately prior to the discussion by a juror with the judge relative to an illness of juror's wife which would make it very inconvenient for him to remain away from home overnight. In State ex rel. Dato v. Himes (Fla.), 184 So. 244, 247, this court listed as one circumstance for entering a mistrial with the right preserved for a second trial "where the prisoner by his own misconduct places it out of the power of the jury to investigate his case correctly, thereby obtaining an unfair advantage of the state * * *".
The question here under consideration was discussed by this court in State v. Grayson, Fla., 90 So.2d 710, in which it announced illustrations of urgent or necessary reasons that would justify the entry of an order declaring a mistrial. These reasons were illustrative but not exclusive. We announced the rule there that where a jury is discharged for legally insufficient reasons and without necessity and without the defendant's consent, such discharge would preclude a subsequent trial for the same offense. But in determining what is a legally sufficient reason, the trial court must be armed with discretion since he is conducting the trial and familiar with circumstances, tensions and conditions which may be present in the courtroom. The matter of the trial judge's discretion in such cases was discussed by the Supreme Court of the United States in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, in which that court affirmed Gori's conviction at his second trial on a charge he had knowingly received and possessed goods stolen in interstate commerce. After his first trial had been terminated by the trial judge's declaration of a mistrial sua sponte and without petitioner's express consent but concedingly in the trial court's exercise of discretion out of regard for petitioner's interest, the court held that the second trial was not double jeopardy, and said: 
"Since 1824 it has been settled law in this Court that `The double-jeopardy provision of the Fifth Amendment * * * does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.' Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 831, 93 L.Ed. 974; United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165; Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146; Keerl v. State of Montana, 213 U.S. 135, 137-138, 29 S.Ct. 469, 53 L.Ed. 734; see Ex parte Lange, 18 Wall. 163, 173-174, 21 L.Ed. 872; Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199. Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over *533 his objection, and he may be retried consistently with the Fifth Amendment. Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Dreyer v. Illinois, 187 U.S. 71, 85-86, 23 S.Ct. 28, 47 L.Ed. 79. It is also clear that `This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served * *,' Brock v. North Carolina, 344 U.S. 424, 427, 73 S.Ct. 349, 350, 97 L.Ed. 456, and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion. See Lovato v. New Mexico, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244; cf. Wade v. Hunter, supra. In the Perez case, the authoritative starting point of our law in this field, Mr. Justice Story, for a unanimous Court, thus stated the principles which have since guided the federal courts in their application of the concept of double jeopardy to situations giving rise to mistrials:
"`* * * We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges under their oaths of office. * * *' 9 Wheat., at 580.
"The present case falls within these broad considerations. Judicial wisdom counsels against anticipating hypothetical situations in which the discretion of the trial judge may be abused and so call for the safeguard of the Fifth Amendment  cases in which the defendant would be harassed by successive, oppressive prosecutions, or in which a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused. Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial. It would hark back to the formalistic artificialities of seventeenth century criminal procedure so to confine our federal trial courts by compelling them to navigate a narrow compass between Scylla and Charybdis. We would not thus make them unduly hesitant conscientiously to exercise their most sensitive judgment  according to their own lights in the immediate exigencies of trial  for the most effective protection of the criminal accused."
In State v. Farmer (New Jersey 1966), 48 N.J. 145, 224 A.2d 481, a plea of double jeopardy was denied. In a prosecution for murder the trial court sua sponte declared a mistrial and later denied defendant's motion to dismiss the indictment on the ground of double jeopardy. The mistrial had been declared on the morning of the first day. The New Jersey Supreme Court in an exhaustive treatise on the subject, said: 
"As we have noted above, the double jeopardy protection does not mean that once an accused has been put on trial regularly, the proceeding must run its ordinary course to judgment of conviction *534 or acquittal. The rule does not operate so mechanistically. If some unexpected, untoward and undesigned incident or circumstance arises which does not bespeak bad faith, inexcusable neglect or inadvertence or oppressive conduct on the part of the State, but which in the considered judgment of the trial court creates an urgent need to discontinue the trial in order to safeguard the defendant against real or apparent prejudice stemming therefrom, the Federal and State Constitutions do not stand in the way of declaration of a mistrial. And this is true even if the conscientious act of the trial judge may be characterized as the product of `extreme solicitude' or `overeager solicitude' for the accused. See, Gori v. United States, supra, 367 U.S., at p. 367, 81 S.Ct., at p. 1525. Moreover, if an incident or circumstance of that nature moves the court to order a mistrial not only to safeguard the right of the defendant to a full and fair trial, but also to protect the right of society to have its trial processes applied fully and fairly in the due administration of the criminal law, there is even less basis for a claim of trespass upon the privilege against double jeopardy. See, A.L.I. Proposed Official Draft, Model Penal Code (1962) § 1.08. Clearly the societal right to have the accused tried and punished if found guilty stands side by side with the right of the accused to be prosecuted fairly and not oppressively. While the public right, when it must be considered alone, may not weigh as heavily in the scale as that of the defendant because of the constitutional dimensions of the privilege against double jeopardy and the superior capacity of the State to investigate and prepare for prosecutions, nevertheless when exercise of the trial court's discretion may fairly be said to serve both interests, there is certainly less substantial reason to question its propriety."
In the case sub judice the trial judge was confronted with a situation where the wife of one of the jurors was sick, the defendant had improperly walked out of the courtroom while the trial judge was discussing the illness with the juror, and where considerable discussion had followed, participated in by the court, the prosecuting attorney and defense counsel. Not being sure of his ground under all the circumstances present, and ultimately in the interest of the defendant having a fair trial, and the right of the public preserved, the trial judge exercised his discretion that the entry of the mistrial judgment was for good cause, and in so doing he did not abuse his discretion, and a plea of double jeopardy at a subsequent trial will not be sustained.
Accordingly, it is our opinion and we hold, that in entering the mistrial for cause the trial judge acted within the orbit of his reasonable discretion, the plea of double jeopardy is not good, and the District Court was eminently correct in denying a writ of prohibition. Insofar as the opinion of the District Court may appear to be in conflict, the District Court's opinion is modified to conform to the rule herein announced.
The writ of certiorari is discharged.
It is so ordered.
CALDWELL, C.J., and THOMAS and ERVIN, JJ., concur.
DREW, J., agrees to judgment.