ADKINS, Justice.
By petition for certiorari, we have for review a decision of the District Court of Appeal, Third District, which allegedly conflicts with the opinion of this Court in Adkins v. Smith, 205 So.2d 530 (Fla.1968).
The District Court of Appeal in its opinion (State ex rel. Furlong v. Goodman, Fla.App., 238 So.2d 150) stated the facts as follows:
“Furlong and Robert Lawrence Greenwood were charged by information with the crime of robbery. They were brought to trial together before a jury in the criminal court of record of Dade County. Opening statements by counsel were followed by testimony of the victim of the alleged robbery and that of police officer Larry E. Vitt.
“After cross-examination of officer Vitt by Furlong’s attorney, and at the point where he was to be cross-examined by Greenwood’s attorney, the latter stated to the court: ‘Your Honor, there is a point of law that I would like to discuss. I do not know whether you want me to do it before I start with the witness or after. I think it should be considered first, however.’ Thereupon the court caused the jury and the witness Vitt to retire from the courtroom. Greenwood’s attorney then moved for severance, and in support of the motion stated: ‘Your Honor, I must at this point — because of certain information I have received — at *48 tempt very seriously not to prove Mr. Greenwood’s innocence as much as to prove Mr. Furlong’s guilt. Mr. Furlong is now going to be tried by two prosecutors rather than one.’ Greenwood’s attorney continued, by reading quotations from a decision of a federal court which were such as to indicate that if severance was not granted then in order to throw guilt from his client and upon Furlong in certain respects Greenwood’s attorney was going to be required to produce evidence of certain prejudicial admissions in regard to the matter which had been made by Furlong.
“The court granted Greenwood’s motion for severance. The jurors were recalled, and were addressed by the court as follows:
“ ‘Ladies and gentlemen of the jury, in order to preserve the rights of the defendants in this trial and because of various testimony which counsel for one of the defendants has indicated is necessary to protect his client, and because such testimony — is indicated— would be prejudicial to the other defendants and because case law is clear that in such instances severances must be granted, it has become necessary for the Court at this time to grant the motion of counsel for a severance, accordingly. Therefore, ladies and gentlemen of the jury, I will declare that this trial end as a mistrial and you are therefore discharged from your duty.’
“The jurors were then excused, and departed. Greenwood’s attorney submitted to the court a statement which revealed the evidence he intended to introduce, to which he had referred in moving for severance, whereupon the court announced: ‘Let the record show that after the discharge of the jury, that counsel for Robert Greenwood has submitted a transcript which is part of the State’s file which would show that there would be the type of conflict which counsel indicates.’ Thereafter Greenwood’s attorney stated to the court: ‘Your Honor, you have heard the evidence now. This is not as clear-cut a case as everybody thought it was, especially what I just showed the Court, which shows that after two hours of testimony by Officer Vitt, where Officer Vitt testified that the trenchcoat was thrown by the defendant Robert Greenwood, was inaccurate. Actually, the trenchcoat was thrown by the defendant Loren Furlong and not by the defendant Robert Greenwood. Further, [Vitt testified] that the money that was recovered was taken by the defendant Robert Greenwood.’
“When the trial court granted Greenwood’s motion for severance during the course of the trial of the two defendants, that necessarily called for mistrial as to Greenwood, in order that subsequently he could be tried separately as requested by his motion. The question involved here is whether the granting at that time of a mistrial also as to the codefendant Furlong (instead of proceeding with the trial as to the latter) was for a legally sufficient reason, so as to permit subsequent trial of Furlong, or was without legally sufficient reason thereby precluding his retrial on the ground of double jeopardy. For the reasons set out below, we conclude it was the latter, and that prohibition should issue.”
In Adkins v. Smith, 205 So.2d 530 (Fla.1968), this Court held that, in determining what is a legally sufficient reason for granting mistrial so as to permit a subsequent trial, the trial court must be armed with discretion since he is conducting the trial and familiar with circumstances, tensions and conditions which may be present in the courtroom.
As stated in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (relied upon by this Court in Adkins v. Smith, *49 supra), the Supreme Court of the United States said:
“Since 1824 it has been settled law in this Court that 'The double-j eopardy provision of the Fifth Amendment * * * does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.’ * * * Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant’s consent and even over his objection, and he may be retried consistently with the Fifth Amendment. * * * It is also clear that 'This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served * * *,’ Brock v. State of North Carolina, 344 U.S. 424, 427, 73 S.Ct. 349, 350, 97 L.Ed. 456, and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion.

“Judicial wisdom counsels against anticipating hypothetical situations in which the discretion of the trial judge may be abused and so call for the safeguard of the Fifth Amendment — cases in which the defendant would be harassed by successive, oppressive prosecutions, or in which a judge exercises his authority to help the prosecution, at a trial in which its case is going badly, by affording it another, more favorable opportunity to convict the accused. Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial. It would hark back to the formalistic artificialities of seventeenth century criminal procedure so to confine our federal trial courts by compelling them to navigate a narrow compass between Scylla and Charybdis. We would not thus make them unduly hesitant conscientiously to exercise their most sensitive judgment — according to their own lights in the immediate exigencies of trial — for the most effective protection of the criminal accused.” (Pages 532-533)
This Court in Adkins v. Smith, supra, also quoted from State v. Farmer, 48 N.J. 145, 224 A.2d 481 (1966), as follows:
“Clearly the societal right to have the accused tried and punished if found guilty stands side by side with the right of the accused to be prosecuted fairly and not oppressively. While the public right, when it must be considered alone, may not weigh as heavily in the scale as that of the defendant because of the constitutional dimensions of the privilege against double jeopardy and the superior capacity of the State to investigate and prepare for prosecutions, nevertheless when exercise of the trial court’s discretion may fairly be said to serve both interests, there is certainly less substantial reason to question its propriety.” (Page 534)
Under Adkins v. Smith, supra, the question in the case sub judice is whether or not the trial judge “acted within the orbit of his reasonable discretion” in entering the mistrial for cause. In other words, the action of the trial court in declaring the mistrial should be held to be within his discretion and sustained unless the record clearly shows an abuse of that discretion. The District Court of Appeal in the case sub judice concluded
“[Tjhat the record does not reveal any legally sufficient reason for granting a mistrial as to Furlong, rather than to proceed with the trial as to him, upon making proper explanation to the jury *50 for the discharge of the defendant Furlong at that stage of the case.” (238 So.2d at page 153).
It cannot be disputed that the use of severance and separate trials to avoid prejudicial spillover among co-defendants is expanding. Necessarily, there is also an expansion of the responsibility assigned the trial judge in conducting the trial, and the discretion he must exercise in balancing the interests of the individual against those of the public. New flexibility in conduct of trials on behalf of the accused demands new flexibility in applying standards of constitutional fair play. It is a hard contract indeed if the judge who is required to exercise judgment in looking after the rights of an accused is pinned to a rigid standard as to the rights of the public.
The decision of the District Court of Appeal in the case sub judice is based entirely upon the question of whether or not a legally sufficient reason for granting a mistrial existed, and attempts to determine this question without requiring that an abuse of discretion be shown. There is conflict and this Court has jurisdiction.
In the interest of the respondent having a fair trial, and the right of the public preserved, the trial judge exercised his sound discretion in determining that the mistrial was for good cause. There has been no showing that he abused his discretion and a plea of double jeopardy should not be sustained.
The opinion of the District Court of Appeal is quashed and the cause remanded with instructions to discharge the rule nisi and dismiss the prohibition proceeding.
ROBERTS, C. J., and ERVIN and CARLTON, JJ., concur.
BOYD, McCAIN and DEKLE, JJ., dissent.