594 So.2d 310 (1992)
Roy Dwayne THOMASON, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2796.
District Court of Appeal of Florida, Fourth District.
January 15, 1992.
On Motion for Rehearing March 11, 1992.
Anthony C. Musto, Musto, Zaremba and Rosenthal, Coral Gables, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and James J. Carney, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
AFFIRMED.
WALDEN, JAMES H., Senior Judge, concurs.
STONE, J., concurs specially with opinion.
FARMER, J., dissents with opinion.
STONE, Judge, concurring specially.
I concur in affirming appellant's conviction and sentence. The appellant contends that the trial court's failure to dismiss the charges against him on the grounds of double jeopardy constitutes an abuse of discretion.
The double jeopardy claim arises because of a mistrial declared during an earlier trial on the same charge. The judge declaring the mistrial subsequently entered a recusal order and a second judge, relying on the record, entered the following order[1]:
1. Trial commenced on Monday, March 5, 1990. On Wednesday, March 7, 1990, Laura Morrison, defense counsel, collapsed during the trial. She was told to seek medical treatment. The case was reset until 9:30 A.M. on March 8, 1990. On March 8, 1990, Judge Grossman sent *311 the jury home when he was under the impression that Ms. Morrison again had collapsed both in her office and at the hospital. He requested that he receive assurances from doctors that she would be able to continue with the trial. Those assurances did not come.
2. On March 9, 1990, Ms. Morrison appeared in court in an agitated state with a hospital band on her wrist. She mistakenly called the Judge a doctor and said that she was mistaking her judges and her doctors. She mentioned that there was no easy way out, and she did not notice that her client was in the courtroom during her initial ten minute presentation to the Court.
3. The Judge was presented information from Dr. Ginsburg that Ms. Morrison was under stress and had a history of heart problems. Dr. Israel was quoted as saying that she needed to attend to her medical problems.
4. Judge Grossman was concerned about both Ms. Morrison's personal health and the integrity of the system. The effect of the stress of a trial on Ms. Morrison also concerned the Court.
5. During the March 9, 1990, hearing, Ms. Morrison threatened to sue her doctor and otherwise exhibited an inappropriate affect in the courtroom. Witness and attorney, Hilliard Moldof, testified that her behavior was somewhat inappropriate.
6. At that hearing, Judge Grossman found that she had been lost and somewhat disoriented during the trial. One incident of an outburst in the hall during a recess in the trial was noted where Ms. Morrison told an alleged rape victim's mother that the victim was a liar. Additionally, Judge Grossman expressed concerns that the record might support a claim of ineffective assistance of counsel.
7. After the Defendant expressed confidence in Ms. Morrison, the State asked for a two-week postponement in the trial.
8. The Judge granted a mistrial based upon manifest necessity. There never was a request for self-representation presented to Judge Grossman, and it may have been inappropriate to grant it. See, U.S. v. Von Spivey, 895 F.2d 176 (4th Cir.1990).
9. The court has discretion to grant a mistrial over the Defendant's objections, but must use that discretion with greatest caution, under urgent circumstances and for very plain and obvious causes. U.S. v. Perez, 9 Wheat, 22 U.S. 579, 6 L.Ed 165 (1824) and Gori v. U.S., 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed 2d 901 (1961).
10. One example of manifest necessity warranting a mistrial would be the illness of a judge, accused or juror. Florida ex rel Williams v. Grayson, 90 So.2d 710 (Fla. 1956) and Reyes v. Kelly, 204 So.2d 534 (Fla. 2d DCA 1967). Here, the illness of defense counsel should similarly be considered to be compelling. See, U.S. v. Wayman, 510 F.2d 1020 (5 Cir.1975). This is particularly so where the Court took testimony and conducted a lengthy hearing concerning the effect of counsel's illness on the trial. See, U.S. v. Williams, 411 F. Supp. 854 (S.D.N.Y. 1976)... .
11. Here, Judge Grossman scrupulously exercised his judicial discretion and was led to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. U.S. v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.ed.2d 543 (1971) and Raszka v. Burk, 436 So.2d 255 (Fla. 4th DCA 1983). There is no evidence that Judge Grossman's decision to declare a mistrial was for an improper reason, such as to allow the State to be in a better position on a re-trial of the case.
12. Although any doubt should be resolved in favor of the liberty of the citizen, see, Downum v. U.S., 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), and although another court may have exercised it's [sic] discretion by granting the State's request for a two-week postponement, particularly in light of the Defendant's statement that he was satisfied with counsel, See e.g. Dunkerley v. Hogan, 579 F.2d 141 (2 Cir. [1978] 1987), it can not [sic] be held that Judge Grossman, *312 having presided over the trial and having scrupulously and patiently conducted a lengthy hearing on March 9, 1990, abused his discretion by granting a mistrial. See, U.S. v. Klein, 582 F.2d 186 (2d Cir.1978) and Arizona v. Washington, 434 U.S. [497 at] 508, 98 S.Ct. 824 at 833 [54 L.Ed.2d 717] (1978). Judge Grossman consulted counsel before declaring a mistrail, [sic] considered available alternatives and did not make a precipitate decision. See, Lovinger v. Circuit Court, 845 F.2d 739 (7th Cir.1988).
Although Judge Farmer's dissenting opinion is certainly well-reasoned, I do not agree that United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), is inconsistent with our upholding the discretion of the trial court to grant a mistrial in this case. Although a heavy burden must be met before a trial court may sua sponte order a mistrial in the interest of justice, we should be cautious in reversing such a decision where it is founded on such compelling, and undisputed, facts.
The court was confronted initially with a defense counsel shaking so badly that she required the prosecutor's assistance to stand. The next day she collapsed twice. A doctor's office advised the trial court that a postponement was necessary. Appellant's counsel reappeared in court in a noticeably agitated, disoriented, and confused state, still wearing her hospital admission bracelet and even threatening to sue her doctor for revealing her condition to the court. She also seemed to be under the influence of medication and did not appear to recognize the inappropriate nature of her behavior. Further basis for the mistrial decision is detailed in the above order and is reflected in the record.
In sum, the record supports a trial court decision that it had sufficient reason to conclude that justice could not be served without ordering a mistrial. Cf. Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, reh'g. denied, 368 U.S. 870, 82 S.Ct. 25, 7 L.Ed.2d 70 (1961); United States v. Perez, 9 Wheat 579, 22 U.S. 579, 6 L.Ed. 165 (1824); Goodman v. State ex rel. Furlong, 247 So.2d 47 (1971).
FARMER, Judge, dissenting.
Just as the last of seven defense witnesses had taken the stand to testify, and over the firmly-stated objections of the prosecutor and the defendant and his lawyer, the trial judge declared a mistrial because of doubts about defense counsel's ability to continue trying the case. When the State proceeded to bring him to trial again, defendant understandably pointed to the first trial and requested that he be discharged, which a new judge denied. He now appeals[2] from his conviction and sentence and argues that the double jeopardy clause of both constitutions precluded a new trial after the first had been declared a mistrial over his objection. I cannot disagree with him.
The trial judge recused himself after granting the mistrial. Defendant's motion to dismiss and for discharge was heard by *313 a new judge. At the hearing on the motion, the parties stipulated to the following facts:
On March 5, 1990, trial commenced in this cause. Trial continued throughout March 6th and 7th and on the afternoon of March 7th, the State rested. Subsequently that afternoon, seven defense witnesses were called and testified. Six completed their testimony.
At approximately 5:45 P.M., while the seventh defense witness was testifying on direct examination, Defendant's attorney became very white and shaky and was physically supported by the prosecutor. As a result of Defendant's counsel's illness, the court adjourned the proceedings for the evening. The next morning, March 8th, when trial was scheduled to resume, Defendant's counsel collapsed in her office and, when this fact was made known to the court, the jury was excused for the day.
On the following morning, March 9th, Defendant's counsel was present in court and indicated her readiness to proceed. She stated that upon completion of the testimony of the witness that was on the stand, the only other witness that might be called by the defense would be the Defendant. Defendant personally indicated his confidence in his attorney's ability to proceed and the fact that he did desire to proceed.
Despite these statements from Defendant and his attorney, the court expressed concern over resuming the trial in light of Defendant's counsel's physical condition and the lack of any assurances from a doctor that Defendant's counsel was capable of proceeding. The court referred to a phone call his secretary had received from the secretary of a doctor Defendant's counsel had known for years but who had not treated her during the prior few days to the effect that there ought to be a postponement to allow Defendant's counsel to attend to her personal medical needs.
With regard to assurances from doctors, Defendant's counsel told the court that she had discussed the court's desire for assurances with one of the doctors who had treated her the previous two days; that the doctor indicated that he felt that she was fine, and that he would not have released her otherwise; and that the doctor provided her with his phone number for the court to speak to him. She also indicated that she had attempted to reach the other doctor who had treated her, had been unable to do so, but would try to do so again if the court would give her 30 minutes or so.
Obviously concerned about the court's misgivings, the prosecutor repeatedly expressed the opinion that if the court ordered a mistrial, double jeopardy would preclude a retrial. The prosecutor asked that if the court was concerned with Defendant's counsel's health, it postpone the case rather than order a mistrial. He also noted that the case would be over after the parties finished with the witness on the stand, Defendant, if he testified, and possibly one rebuttal witness.
Both the defense and prosecution specifically objected to a mistrial.
The court then called Hilliard Moldof, an attorney. He testified that he had observed Defendant's counsel that morning and thought "perhaps" she was not realizing that "she was a bit inappropriate" for not having recognized that her client was in the courtroom, that his feeling was that she "might" have still been under some type of medication, that he had "some concerns" about the ability to go forward and that he would want to make sure that she felt capable of going forward.
The comment on the defendant's presence was a reference to the fact that at one point during the hearing, counsel was unaware that Defendant was present. The events that led up to that occurrence, apparently unknown to Mr. Moldof, included the fact that prior to the hearing beginning, Defendant's counsel had noticed that Defendant was not present and had asked that he be brought immediately to the courtroom; the fact that Defendant's counsel left the courtroom after the request, engaging in what the court described as a "flurry of *314 activity outside the courtroom," in an effort to obtain the medical assurances the court wanted; and the fact that Defendant's counsel came back into the courtroom when the case was called and therefore immediately began addressing the court without looking to the box, which was behind her and which was where Defendant was located.
The hearing ended when the court declared its belief that based "on the court's observations of and the appearance and demeanor of counsel during the course of the trial today," it had no other choice but to declare a mistrial.
Both the new prosecutor and new defense counsel agreed that the motion could be considered on the above stipulated facts. When the judge inquired whether he should read the transcript of the first trial, the State responded:
MR. GIUFFREDDA: I don't think that would be necessary, initially. You may have to go through parts of it. I think, basically, the facts really aren't in dispute. That's the way it happened. * * *
The prosecutor relied solely on Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), to support his argument that double jeopardy did not bar the retrial.
In his written order denying the motion, the new judge referred to other incidents at trial, not included in the written stipulation. Among other things, he pointed to the facts that defense counsel appeared in court on March 9th with a hospital band on her wrist, that she mistakenly called the judge "doctor", that on March 8th the judge "was presented with information" from a doctor that defense counsel had a history of heart problems, that defense counsel threatened to sue her doctor, that she had "otherwise exhibited an inappropriate affect in the courtroom," that the trial judge had remarked that she had been "lost and somewhat disoriented" during the first trial, and that in a hallway outside the courtroom she had told the mother of the victim that her daughter was a liar. The new judge also placed some emphasis on the original judge's comment to the effect that "the record might support a claim of ineffective assistance of counsel."
I am troubled by the trial judge's reliance on facts other than those stated in the stipulation, to which the State of course agreed. It is one thing for the original judge to have pointed to these additional "facts"; it is quite another for a successor judge to assess the double jeopardy consequences by a consideration of them, when neither the State nor the defense thought them relevant or material.
Even if it were proper for the second judge to consider them, I think they are all insignificant and certainly no basis for a mistrial over a collective objection. The business about the hospital band and calling the judge "doctor" border on the frivolous. The State has agreed in the stipulation that counsel's failure to notice that her client was now in the courtroom was both explainable and understandable. The "history of heart problems" was unsubstantiated hearsay, and the threat to sue the doctor might reasonably be taken as evidence of competence, rather than an inability to complete the current trial. And if we are suddenly going to allow mistrials over defense objection on the basis of an "inappropriate affect" or defense counsel calling witnesses liars or the record supporting a later claim of ineffective assistance of counsel, then the double jeopardy clause will cease to have any meaning.
The recognition that the constitutional ban against double jeopardy allows some second trials when the first has not ended in judgment is fairly old. In United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824), the court said:
We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, *315 which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. [e.s.]
9 Wheat. at 580. The Perez standard has been used by the United States Supreme Court down to the present time to define the right at issue. In Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), however, the Court seemed to relent a little on the Perez standard by adding a new wrinkle based on a finding as to which party was the perceived beneficiary from the mistrial ruling.
Unfortunately for the State's reliance on Gori, the Court later fled from its new formulation in United States v. Jorn, 400 U.S. 470, 483, 91 S.Ct. 547, 556, 27 L.Ed.2d 543, 546 (1971). It there characterized its Gori holding as an application of Perez modified by the notion that there is no abuse of discretion in the circumstances of declaring a mistrial on the court's own motion when the trial judge was acting "in the sole interest of the defendant." Gori, 367 U.S. at 369, 81 S.Ct. at 1527; Jorn, 400 U.S. at 482, 91 S.Ct. at 556. The court proceeded, however, to abandon its Gori modification, saying:
Further, we think that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefitted from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision. Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action.
Jorn, 400 U.S. at 483, 91 S.Ct. at 556.
The court ultimately explained the essential policy underlying its double jeopardy holdings in the following summation:
For the crucial difference between reprosecution after appeal by the defendant and reprosecution after a sua sponte judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of the "valued right to have his trial completed by a particular tribunal." [e.o.]
Jorn, 400 U.S. at 484, 91 S.Ct. at 557. Distinguishing from a mistrial motion by a defendant where there is no suggestion of prosecutorial or judicial overreaching, the court went on to say that:
In the absence of such a motion, the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.
Jorn, 400 U.S. at 485, 91 S.Ct. at 557.
So, unavoidably, we come back to the words of Justice Story written nearly a century and three-quarters ago: "manifest necessity" and a power that "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." "Manifest" means crystal clear, immediately apparent to any reasonable mind; in folk wisdom "as plain as the nose on your face;" or in the words of Justice Story himself "plain and obvious". "Necessity" means the utter absence of options or alternatives, a consequence that is unavoidable and inevitable.
In determining whether the cause was "manifest", it is inconceivable to me that we should depend on the trial judge's internal thought processes; it should be immediately apparent upon a glance at the record. Surely that cannot be said here. Defense counsel was not prostrate, unconscious or incapable of moving or talking, thinking or reasoning. Indeed she was in court forcefully declaring her ability to proceed. To justify a mistrial caused by a sudden incapacity of defense counsel, the constitutional *316 standard of Perez requires at a minimum  if the words "manifest necessity" and "urgent circumstances" are to have any meaning  an obvious physical inability to carry on in any way, preferably demonstrated by the absence of the lawyer from the courtroom. It certainly cannot be used where counsel is, in the colorful words of John Mortimer in many of his Rumpole stories, "up on his hind legs putting an impertinent question or two to the prosecution."
The circumstances here were far from urgent. The reason to abort so near the end was at best fuzzy and all woolly, not plain and distinct. What was there about these events that made it manifest or urgent to do something right then on that morning, as opposed to continuing with the last witness or witnesses and holding closing argument? The answer must be, as a matter of law, there really was no reason not to have proceeded. No cataclysmic event had just occurred which indisputably precluded going further: counsel was not unconscious or paralyzed; she was present in court, and although she lacked a written statement from her doctor, she proffered his oral statement and his availability to speak directly to the court by telephone.
"Manifest necessity" means to me that no alternative even theoretically exists. Here there were at least three obvious ones which the court ignored: a recess for another day; direct consultation with the lawyer's doctor, who was apparently really standing by, if the court so desired; and an actual resumption of the trial for the judge to see for himself whether counsel was truly impaired by the effects of some illness. Because none of these were tried, it is sheer speculation to say that none of them would have worked.
As might be expected in light of Perez, the burden of showing that a mistrial was justified by manifest necessity is a heavy one. Parce v. Byrd, 533 So.2d 812 (Fla. 5th DCA), rev. denied, 542 So.2d 988 (Fla. 1988); State v. Collins, 436 So.2d 147 (Fla. 2d DCA), rev. denied, 434 So.2d 889 (Fla. 1983). In this case, the burden on the State was made insurmountable by the trial judge's unwillingness to try these other measures, rather than take defendant's option to go to this jury away from him.
The proper application of the Perez standard is illustrated by two cases in which the courts rejected double jeopardy defenses after previous mistrials caused by the illness of defense counsel. In United States v. Von Spivey, 895 F.2d 176 (4th Cir.1990), counsel's illness occurred after one week of trial, at the first notice of which the trial judge recessed for the day. On the next day, when it became apparent that the illness was severe, the court then recessed for an entire week. When that week was up, the court learned that counsel would be hospitalized indefinitely. The judge then considered numerous alternative resolutions, including the immediate appointment of substitute counsel, and the defendant acting pro se. In the end the court severed the defendant from three codefendants whose cases were being tried at the same time and declared a mistrial only as to that defendant. On appeal the court concluded that no alternatives less drastic than ending the trial were available to the trial court.
In United States v. Wayman, 510 F.2d 1020 (5th Cir.), cert. denied, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975), defense counsel was injured in an automobile wreck and was unable to continue with the trial. In that case, as in Von Spivey, the attorney was completely incapacitated, with no possibility of returning to the courtroom in the foreseeable future. In contrast, here defense counsel actually stood before the court and proclaimed her readiness to proceed. Her client agreed that she could proceed, the prosecutor agreed that she could proceed, and there was evidence that her doctor agreed that she could proceed.
Two Florida decisions also illuminate the standard. In Ostane v. Hickey, 385 So.2d 110 (Fla. 3d DCA 1980), a trial judge declared a mistrial over the defendant's objection because an essential state witness was stabbed in front of the courthouse. On a petition for prohibition, the district court found a double jeopardy violation in a second trial, citing Jorn and the failure to *317 consider lesser alternatives, such as a recess. Similarly, in Bryant v. Stickley, 215 So.2d 786 (Fla. 2d DCA 1968), where the mistrial was based on the prosecuting attorney being suddenly hospitalized for bleeding ulcers, the court expressly found that the failure to explore other alternatives, with testimony if required, was fatal to a retrial.
The State now attempts to justify this judge's action by saying that it was an incident of judicial discretion to which we must bow. I profoundly disagree. The nature of the Perez standard is such that no reasonable judge must be able to find an alternative to a mistrial. In contrast, the abuse of discretion test relied on by the State is that the trial judge's decision must stand unless no reasonable judge would have done as he did.
Apart from my reading of Perez, I simply do not believe that the subject of judicial discretion is even implicated here. Judicial discretion has never been confused with the raw power to choose between alternatives, such as to go or not to go. Nor is judicial discretion unreviewable simply because the trial judge chose an alternative that was theoretically available to him. As he did with so many complex ideas, Justice Cardozo distilled the essence of the thought in a few words:
The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to "the primordial necessity of order in the social life." Wide enough in all conscience is the field of discretion that remains.
B. Cardozo, THE NATURE OF THE JUDICIAL PROCESS, at 141. Cardozo's insight was applied by the court in Parce:
[Judicial discretion] is not a naked right to choose between alternatives. There must be a sound and logically valid reason for the choice made. If a trial court's exercise of discretion is upheld whichever choice is made merely because it is not shown to be wrong, and there is no valid reason to support the choice made, then the choice made may just as well have been decided by the toss of a coin. In such case there would be no certainty in the law and no guidance to bench or bar.
533 So.2d at 814. See also State ex rel. Mitchell v. Walker, 294 So.2d 124, 126 (Fla. 2d DCA 1974).
We must take care to avoid a mechanical application of the abuse of discretion test to shrink from reviewing the incorrect application of clear legal standards or the application of the wrong standard  all in the name of deferring to the superior vantage point of the trial judge. To do so is to have the rule absorb the whole of judicial review  to have the branch assimilate the tree. It is vital to the preservation of fundamental constitutional principles, such as the core provisions of the Bill of Rights, not to let the discretion test conceal the failure to vindicate a right as important as the double jeopardy clause. I fear that is exactly what has been done here.
To put it directly, the correct legal principle is that a trial judge may not declare a mistrial  free of double jeopardy consequences  on the basis of an alleged incapacity of defendant's counsel so near the end of the case where defense counsel is present in the courtroom asserting the ability to proceed, and both the State and the defendant expressly agree on the record that counsel is capable and should proceed. The only exception should be where the record demonstrates without contradiction that the alleged incapacity is objectively verifiable. The alleged inability to proceed may not be based solely, or even substantially, on the subjective impressions of the trial judge, and it must be such that it cannot be cured or avoided by another alternative. The Perez standard cannot properly be applied to abort a criminal trial over the collective objection of everyone, where the "disabled" lawyer is in the courtroom *318 proclaiming the readiness to proceed and none of the alternatives to a mistrial were considered or tried.
I am left with no choice but to dissent.

ON MOTION FOR REHEARING
PER CURIAM.
We grant appellant's motion for rehearing only to certify to the Florida Supreme Court the following question of great public importance:
UNDER WHAT CIRCUMSTANCES MAY A TRIAL JUDGE SUA SPONTE DECLARE A MISTRIAL, FREE OF DOUBLE JEOPARDY CONSEQUENCES, BASED ON HIS SUBJECTIVE IMPRESSION THAT DEFENSE COUNSEL IS NOT COMPETENT TO PROCEED?
In all other respects, we deny the motion for rehearing and motion for rehearing en banc.
REHEARING GRANTED IN PART AND QUESTION CERTIFIED.
STONE and FARMER, JJ., and WALDEN, Senior Judge, concur.
NOTES
[1] Record page references are omitted.
[2] Defendant previously filed a petition for a writ of prohibition in this court after the mistrial was granted. Thomason v. Grossman, case no. 90-2394. We denied the petition without an opinion. The State argues that the denial of prohibition, as the law of the case, requires an affirmance of the denial of the motion for dismissal and discharge. I thoroughly disagree.

It is fundamental that prohibition is an extraordinary prerogative writ. Public Employees Relations Commission v. District School Board, 374 So.2d 1005 (Fla. 2d DCA 1979). That is simply a fancy way of saying that an appellate court does not have to grant the writ even if a traditional case for prohibition has been shown. There may have been good reasons having nothing to do with the underlying merits of defendant's position for denying the writ, and it would be sheer speculation on our part to try now to divine them. PERC, 374 So.2d at 1010. Moreover, the writ was sought on an emergency basis shortly before the start of a second trial  hence without a record, such as we have now. Fyman v. State, 450 So.2d 1250 (Fla. 2d DCA 1984).
In Obanion v. State, 496 So.2d 977 (Fla. 3d DCA 1986), the Third District refused to bar a constitutional defense (speedy trial) because of a prior petition for prohibition denied without opinion, but the court announced that henceforth summary denials of prohibition would be deemed on the merits unless the denial says otherwise. This court has never adopted such a rule, and I hope it never does  at least as long as prohibition is deemed a matter of mere grace.