600 So.2d 1224 (1992)
Paul E. COHENS, Petitioner,
v.
Honorable Thomas ELWELL, Circuit Judge, Respondent.
No. 91-2644.
District Court of Appeal of Florida, First District.
June 9, 1992.
Steven Scheck, Gainesville, for petitioner.
Robert A. Butterworth, Atty. Gen., and Edward C. Hill, Jr., Asst. Atty. Gen., for respondent.
PER CURIAM.
Paul E. Cohens petitions this court for a writ of prohibition, arguing that any further prosecution on certain criminal charges would violate his constitutional protections against double jeopardy. Finding that his claims have merit, we grant his petition and issue the writ.
*1225 A jury of six members plus an alternate was selected and sworn on Monday, August 5, 1991. Cohens' trial on a charge of conspiracy to traffic in cocaine was then scheduled to commence on Friday, August 9. At 1:20 p.m. on Thursday, August 8, a hearing was held where the state advised the court that at approximately 4:00 p.m. on Monday afternoon, August 5, the prosecutor was advised by an FDLE agent that Leroy Ellis, a confidential source and an essential state witness, had been hospitalized in Orlando with heart problems. On Wednesday, August 7, the FDLE agent was advised that a heart catheterization would be performed to determine if surgery was necessary. Surgery was subsequently ruled out and Ellis was expected to be discharged on Friday. His doctors advised him, however, that he was to remain sedentary for at least two days. The FDLE agent testified at hearing that he learned of Ellis' hospitalization during a phone call on Monday afternoon. FDLE agents in Orlando confirmed that Ellis was hospitalized and the nature of his medical situation. The state moved for continuance of the trial until the following week. At that point, a deputy clerk testified that he had, pursuant to the trial court's instructions, called each of the jurors and asked whether they could serve if the trial were to be held on August 16. Two said it would be a hardship and four said there would be no problem. Both attorneys stated they would be available to try the case the following Thursday or Friday but the judge scheduled the case for Friday, August 16.
A second hearing was held on Tuesday, August 13. There the trial judge stated that two jurors advised him that they could not serve on Friday. One juror held nonrefundable airline tickets for a family vacation. The second, a veterinarian, was scheduled to perform surgery on Friday without a backup. The jury was discharged when the defense would not agree to proceed with five jurors. A motion to dismiss was denied and the trial was reset for September 3 with a new jury. Cohens sought prohibition and this court issued a show cause order, staying proceedings below pursuant to Florida Rule of Appellate Procedure 9.100(f).
The scope of the double jeopardy clause of the Florida Constitution is the same as that of the federal protection. Carawan v. State, 515 So.2d 161 (Fla. 1987). It has long been held that the government may bring a second prosecution where a mistrial has been occasioned by manifest necessity. United States v. Perez, 22 U.S. 579, 9 Wheat 579, 6 L.Ed. 165 (1824). Thus, the issue we must resolve is whether there was a manifest necessity justifying the mistrial. If so, the petitioner may be reprosecuted. If not, he must be discharged. "Manifest necessity" is a term which has not been given a bright line definition because of the variety of situations that arise in the course of trying cases. Where the reason for the mistrial relates to the unavailability of a critical prosecution witness or where the prosecution is attempting to use superior resources to harass the defendant, strict scrutiny is appropriate. On the other extreme, where the jury is deadlocked, great deference will be given to a conclusion that a mistrial is necessary. Where the factual situation falls in between the described extremes, a trial court's exercise of "sound discretion" is entitled to deference. Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The state relies on State v. Sly, 459 So.2d 479 (Fla. 2d DCA 1984), where the court held that the unavailability of a critical state witness created a manifest necessity for the declaration of a mistrial.
Petitioner argues that there was no manifest necessity for a mistrial. Manifest necessity arises because of some misfortune which, although the fault of neither party, renders continuation of the trial impossible. Raszka v. Burk, 436 So.2d 255 (Fla. 4th DCA 1983), review denied, 446 So.2d 100 (Fla. 1984). The trial was rescheduled for Friday even though it could *1226 have been conducted on Thursday, August 15. On Tuesday of that week, the court advised the attorneys that two of the jurors had personal conflicts on Friday, August 16. The jury was discharged even though the state had advised that it was prepared to try the case any day. No inquiry was made by the court as to the availability of any other day of the week to schedule the trial despite the willingness of both attorneys to proceed. Petitioner asserts no manifest necessity can exist absent a judicial inquiry and an opportunity for the defendant to cross examine the basis for the discharge of the jury. Ostane v. Hickey, 385 So.2d 110 (Fla. 3d DCA 1980). Petitioner characterizes the alleged reasons for discharge as nothing more than juror convenience and case management within a monthly trial term, which are not "manifest necessity." State ex rel. Wheeler v. Cooper, 157 So.2d 875 (Fla. 2d DCA 1963). Petitioner argues that the mistrial was an abuse of discretion. He had no hand in creating the conditions that led to the declaration of the mistrial, and alternate days for trial were available and requested by the defense.
There is little doubt that the unavailability of a critical state witness can create a "manifest necessity" which will allow a mistrial without prohibiting retrial. Nevertheless, in such situations the trial court is well advised to make an inquiry and create a record as to the nature of the witness' testimony, reason for the witness' unavailability, and if and when the witness will become available. See Routh v. United States, 483 A.2d 638 (D.C.Ct.App. 1984); State v. Sanchez, 541 A.2d 455 (R.I. 1988). As the respondent correctly points out, a "strict scrutiny" test should be applied by a reviewing court in this type of situation. Were that the only issue in this case, it is doubtful whether petitioner would be entitled to relief. Instead, the trial court decided to hold over the same jury and attempt to try the case within a reasonable time thereafter. The reasons for not trying the case on August 16, however, are not very compelling. The two jurors in question did not state they absolutely could not be present for trial on August 16, but that it would be inconvenient for them to do so. It is well-established that the legitimate unavailability of a juror is "manifest necessity." Cherry v. Director, State Board of Corrections, 635 F.2d 414, 419 (5th Cir.), cert. denied, 454 U.S. 840, 102 S.Ct. 150, 70 L.Ed.2d 124 (1981). We are hesitant to conclude, however, that the potential inconveniences to the two jurors rendered them legitimately unavailable and created a manifest necessity for a mistrial. Further, even if the trial judge properly concluded the trial could not be held on August 16, he did not actively explore his other options before discharging the jury. This raises questions as to any conclusion that there is a manifest necessity. See State v. Baldic, 131 N.H. 225, 551 A.2d 977 (1988); Commonwealth v. Ferguson, 446 Pa. 24, 285 A.2d 189 (1971); People v. McJimson, 135 Cal. App.3d 873, 185 Cal. Rptr. 605 (1982).
Our own research on this question revealed a case which most closely parallels the facts of this case, People v. Michael, 48 N.Y.2d 1, 420 N.Y.S.2d 371, 394 N.E.2d 1134 (1979). There, counsel for the defense was unable to attend trial after it had commenced because his father had died unexpectedly during the night. The prosecutor suggested that the case be adjourned until the defendant's counsel could return but the court declared a mistrial since it was impossible to continue the trial in the absence of defense counsel and an adjournment was not feasible because the trial had to terminate by the end of the week since the court and several members of the jury had made vacation plans for the following week. Michael was later tried and convicted but the Court of Appeals of New York reversed, finding a double jeopardy violation. The court stated:
[A] mistrial founded solely upon the convenience of the court and the jury is certainly not manifestly necessary. While the court could not have continued defendant's trial in the absence of defense counsel, a delay of several days *1227 would certainly appear to have been reasonable, despite any inconveniences it might have imposed upon the court and some jurors. Rather than considering this alternative seriously, the court sua sponte and unfortunately declared a mistrial. That decision constituted an abuse of discretion. A defendant's right to have his fate determined as expeditiously as possible and by the first jury to which the case is presented is a basic one, and may not be set aside without strong reason. While it is unfortunate that the travel plans of the court and several jurors might have been disrupted, such inconvenience is a necessary part of our criminal justice system... .
[A] citizen called to jury duty will often be required to make some personal sacrifices, financial or otherwise. This usually seems unjust to those so called upon, and in fact it sometimes is unjust, but it is necessary as long as we are to persist in our cherished belief that an accused felon is entitled to be tried by a jury of his peers. This does not mean that juror discontent will never justify a mistrial. Indeed, if a jury becomes biased against a defendant as a result of the length of the trial or for some other reason, and is unable to fairly consider that defendant's guilt or innocence, the court is then required to declare a mistrial. Such cases, however, are rare, for a distinction must be drawn between the ordinary pique of a juror at being forced to postpone his or her normal pursuits, and that inability to fairly view the evidence which mandates a mistrial. Most jurors will remain faithful to their oath and put aside their personal grievances in the attempt to reach a fair verdict. Were this not so, the jury system would be a mockery, for there are few jurors who would not prefer to be elsewhere.
The decision whether a mistrial is necessary because of juror bias is often based on subtle indications of discontent, not always apparent on the cold face of the record presented to an appellate court. Hence, as is noted above, a trial judge is entrusted with considerable discretion in making such determinations, for it is the trial judge, better than any other, who can detect the ambience of partiality. In such cases, moreover, it is often better to err on the side of caution, for retrial is a lesser evil than conviction by a biased jury. The court's discretion in making such decisions, however, is not unlimited. Where, as here, the decision to declare a mistrial is based solely on the fact that a delay in trial would inconvenience the court and the jury, and without any inquiry into the effect of such a delay on the jury's ability to render a fair verdict discretion falters and abuse appears.
In short, our examination of the trial record persuades us that it was not at all necessary to declare a mistrial at the time that decision was made, although it is not inconceivable that a mistrial might have eventually become a necessity had defense counsel's absence continued unduly. Hence, the retrial of this defendant for the same crimes was prohibited by the constitutions of both New York and the United States, and these constitutional prohibitions against double jeopardy mandate reversal of defendant's conviction and dismissal of the indictment.
Id. 420 N.Y.S.2d at 375-76, 394 N.E.2d at 1138-39. We agree with the reasoning and conclusion of the Michael decision and find them applicable to the case before us under the constitutions of Florida and United States. Accordingly, we grant the petition and issue the writ of prohibition, directing that the conspiracy to traffic in cocaine charges against Cohens be discharged.
SMITH, BARFIELD and ALLEN, JJ., concur.