620 So.2d 1234 (1993)
Roy Dwayne THOMASON, Petitioner,
v.
STATE of Florida, Respondent.
No. 79705.
Supreme Court of Florida.
June 24, 1993.
*1235 Anthony C. Musto, Miami, for petitioner.
Robert A. Butterworth, Atty. Gen., Joan Fowler and James J. Carney, West Palm Beach, and Michael J. Neimand, Miami, Asst. Attys. Gen., for respondent.
BARKETT, Chief Justice.
We have for review Thomason v. State, 594 So.2d 310 (Fla. 4th DCA 1992), in which the district court certified the following question as one of great public importance:
Under what circumstances may a trial judge sua sponte declare a mistrial, free of double jeopardy consequences, based on his subjective impression that defense counsel is not competent to proceed?
We have jurisdiction.[1] We restate the question in conformity with the facts of this case:
Does double jeopardy preclude a retrial when a trial judge sua sponte, without considering and rejecting all possible alternatives, declares a mistrial based on the subjective impression that defense counsel is not competent to proceed?
We answer the question in the affirmative based on article I, section 9 of the Florida Constitution and quash the decision of the district court.
Thomason was charged with one count of armed kidnapping, two counts of armed sexual battery, and one count of aggravated assault stemming from an alleged attack on a thirteen-year-old girl while she was babysitting a younger child. When the trial began on March 5, 1990, the State nolle prossed the aggravated assault count.
The trial ended on March 9 when the judge declared a mistrial over the objection of both the defendant and the State. The judge stated that based on his observations of the appearance and demeanor of defense counsel, he had no choice but to declare a mistrial. At the time the mistrial was declared, the State had rested its case, and the defense had put on six witnesses. The defense was in the process of questioning its seventh witness, and the defendant's counsel said that the only possible additional witness was Thomason. The prosecutor said that he might call one rebuttal witness.
The defendant later filed a motion to dismiss and for discharge, asserting that there was no manifest necessity for the mistrial and that it would constitute double jeopardy to retry him. The judge entered an order removing himself from consideration of the motion.
The basic facts prompting the mistrial declaration are not in dispute. On the third day of the trial the defendant's attorney became white and shaky and had to be physically supported by the prosecutor. Trial was adjourned for the day and postponed the following day after the judge learned that the attorney had collapsed. The next morning, the defendant's counsel indicated that she was able to proceed. *1236 The defendant, who had talked with his counsel for between forty and fifty minutes the previous evening, expressed confidence in her and indicated his desire to proceed with the trial.
The judge, however, expressed concern about resuming the trial in light of the attorney's physical condition and the lack of any assurances from a doctor that she was capable of proceeding. The defendant's counsel then informed the judge that she had just talked with a doctor on the telephone who had seen her the previous day and that the doctor was "perfectly willing to tell you that I am fine and that he discharged me." The attorney also asked for a thirty-minute recess so that she could attempt to contact one of the other doctors who had examined her the day before. The judge made no effort to contact either of these doctors, noting instead that he had received a call from the office of another of the attorney's doctors and that someone from that office had requested that the trial be postponed so that the attorney could attend to her personal medical needs. The judge apparently did not speak directly with the doctor. The attorney explained that although she was regularly treated by the doctor whose office called the judge, she had not seen him in the last few days because he was in California.
The prosecutor repeatedly expressed the opinion that if the court ordered a mistrial, double jeopardy would preclude a retrial, and he twice asked the court to consider a two-week postponement. The court never addressed the prosecutor's request. Instead, the court called as its own witness an attorney, in court for another matter, who testified that he had observed the defendant's counsel and thought she was behaving inappropriately because she did not realize at one point that the defendant was in the courtroom and that she might be on medication.[2]
The new trial judge denied the motion to dismiss and for discharge. A petition for writ of prohibition, asserting that double jeopardy provisions barred defendant's retrial and that the trial court should be prohibited from proceeding in the case, was filed in the Fourth District Court of Appeal. The petition was denied without opinion. Following the denial of the petition, the defendant entered a plea of nolo contendere to the charge of armed kidnapping and to two counts of aggravated battery, as lesser included offenses of the armed sexual battery counts. Thomason specifically reserved his right to appeal the denial of the motion to dismiss and for discharge. Adjudication was withheld and the defendant was placed on probation for five years, with credit for the time spent in custody. The plea was accepted by the court. Without opinion, the Fourth District Court of Appeal affirmed the order placing defendant on probation, Thomason, 594 So.2d at 310, but on rehearing the court certified the question as one of great public importance. Id. at 318.
The protection of an accused against being twice put in jeopardy for the same offense is a right guaranteed by both the Fifth Amendment to the United States Constitution and article I, section 9 of the Florida Constitution. Jeopardy attaches in a criminal proceeding when the jury is impaneled and sworn. Crist v. Bretz, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978); State ex rel. Williams v. Grayson, 90 So.2d 710, 713 (Fla. 1956). The reason that a defendant is put in jeopardy before the trial ends with a verdict has been explained by the United States Supreme Court as follows:
The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State *1237 with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).
Thus, a defendant has a "valued right" to have his or her trial completed by a particular tribunal. Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). However, the right is not absolute. For example, when the defendant requests declaration of a mistrial, double jeopardy usually is not a bar to reprosecution. Oregon v. Kennedy, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982). Even in cases where a mistrial is declared over the objection of the defendant, the double jeopardy clause does not guarantee that a defendant cannot be retried. The right to have a trial concluded by a particular tribunal sometimes must give way to the public interest in allowing the State one "full and fair opportunity" to present evidence to an impartial jury. Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978).
However, absent circumstances thwarting the State's one full and fair opportunity to present its case, the right of a defendant to completion of his or her trial by a particular tribunal should control. As the United States Supreme Court noted in United States v. Dinitz:
The distinction between mistrials declared by the court sua sponte and mistrials granted at the defendants's request or with his consent is wholly consistent with the protections of the Double Jeopardy Clause. Even when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire "to go to the first jury and, perhaps, end the dispute then and there with an acquittal."
424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976) (quoting United States v. Jorn, 400 U.S. 470, 484, 91 S.Ct. 547, 556, 27 L.Ed.2d 543 (1971)). See also Jorn, 400 U.S. at 485, 91 S.Ct. at 557 ("[T]he defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial.").
Because the right not to be subjected to double jeopardy is so important and because it is frustrated when a trial ends before a verdict is reached, the State bears a heavy burden in justifying a mistrial over the objection of a defendant. Arizona v. Washington, 434 U.S. at 505, 98 S.Ct. at 830. Doubt about whether the mistrial is appropriate is resolved "in favor of the liberty of the citizen." Downum v. United States, 372 U.S. 734, 738, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100 (1963), (quoting United States v. Watson, 28 F.Cas. 499, 500-01 (D.C.S.D.N.Y. 1868) (No. 16,651)). The State must demonstrate "manifest necessity" for the mistrial, a requirement that has been part of this country's jurisprudence since 1824. United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).[3] The manifest necessity standard must be applied on a case-by-case basis and cannot be applied mechanically. See, e.g., Arizona v. Washington; Strawn v. State *1238 ex rel. Anderberg, 332 So.2d 601 (Fla. 1976); Adkins v. Smith, 205 So.2d 530, 532 (Fla. 1967).
The United States Supreme Court has not always been clear about how much deference should be given to the trial judge's finding of manifest necessity. For example, in Gori v. United States, 367 U.S. 364, 369, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961), the Court suggested that when a mistrial is declared in the "sole interest" of the defendant, a reviewing court should not second-guess the trial judge's decision to discharge the jury and permit retrial. However, a decade later in Jorn, the Court abandoned that standard of review, stating:
[W]e think that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies under-pinning the double jeopardy provision. Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action.
Jorn, 400 U.S. at 483, 91 S.Ct. at 556. The Court went on to say that "bright-line rules based on either the source of the problem or the intended beneficiary of the ruling would only disserve the vital competing interests of the Government and the defendant." Id. at 486, 91 S.Ct. at 557. The Court in Jorn emphasized the trial judge's obligation to "take care to assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal." Id.
The Court in Jorn, in holding that reprosecution of the defendant in that case was barred, focused particularly on the trial judge's failure to evaluate other alternatives, including a trial continuance, before declaring a mistrial. The Court stated:
It is apparent from the record that no consideration was given to the possibility of a trial continuance; indeed, the trial judge acted so abruptly in discharging the jury that, had the prosecutor been disposed to suggest a continuance, or the defendant to object to the discharge of the jury, there would have been no opportunity to do so. When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte declaration of this mistrial.

400 U.S. at 487, 91 S.Ct. at 558 (emphasis supplied).
Courts construing Jorn generally have found that it requires trial judges, at the very least, to evaluate and discuss available alternatives before declaring a mistrial over the objection of the defendant. See, e.g., United States v. Bates, 917 F.2d 388, 396 (9th Cir.1990) (relying on Jorn to find that trial court should "consider and correctly evaluate the alternatives to a mistrial"); Abdi v. Georgia, 744 F.2d 1500, 1503 (11th Cir.1984) (record must disclose that trial court considered alternatives before declaring mistrial), cert. denied, 471 U.S. 1006, 105 S.Ct. 1871, 85 L.Ed.2d 164 (1985); Grandberry v. Bonner, 653 F.2d 1010, 1014 (5th Cir.1981) (retrial permitted where record indicates trial judge carefully considered the alternatives and did not act in an abrupt, erratic, or precipitate manner). In a case involving declaration of a mistrial following the illness of the defendant, the Second Circuit Court of Appeals discussed the trial court's failure to consider the alternative of a continuance:
When the problem of petitioner's illness arose, he [the trial judge] conferred with counsel and gave each a fair opportunity to explain his situation with regard to how the trial should proceed. But the apparent availability of at least one alternative to a mistrial  adjourning the trial for 7 to 10 days  leads us to conclude that a mistrial was not a "manifest necessity." In the absence of any record evidence or statement by the court indicating why a short continuance would have been unreasonable, unfair, or impractical, we decline to speculate as to factors that the trial *1239 judge might possibly have considered, such as the "freshness" of the evidence. On this record the declaration of a mistrial cannot properly be sustained, over appellant's objection, as having been required by a "high degree" of necessity.
Dunkerly v. Hogan, 579 F.2d 141, 147-48 (2d Cir.1978), cert. denied, 439 U.S. 1090, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979) (footnote omitted) (emphasis supplied).
This Court has only briefly discussed what constitutes instances of "manifestly urgent and absolute necessity" justifying declaration of a mistrial. State ex rel. Williams v. Grayson, 90 So.2d 710, 713 (Fla. 1956). The reasons listed in Grayson are illness of the judge, the accused, or a juror that requires the absence of any of them from the court; the inability of the jury to agree on a verdict after proper deliberation; or the consent of the accused. Id. In Adkins, this Court found that these reasons were "illustrative but not exclusive." 205 So.2d at 532.
The district courts of appeal, however, have grappled more recently and regularly with situations in which a trial participant becomes ill or absent and the trial court declares a mistrial. In Cohens v. Elwell, 600 So.2d 1224 (Fla. 1st DCA 1992), the court held that no manifest necessity existed for a mistrial after an essential witness became ill and jurors indicated a potential inconvenience in serving at a later time. The court stated: "[E]ven if the trial judge properly concluded the trial could not be held on August 16, he did not actively explore his other options before discharging the jury. This raises questions as to any conclusion that there is a manifest necessity." Id. at 1226; see also Perkins v. Graziano, 608 So.2d 532 (Fla. 5th DCA 1992) (no manifest necessity when trial judge sua sponte declared a mistrial because of one juror's absence without exploring the alternative of continuance); Ostane v. Hickey, 385 So.2d 110 (Fla. 3d DCA 1980) (trial judge, in declaring mistrial, acted without proof of legally sufficient reason to discharge jury when key witness was stabbed and unavailable and no consideration was given to the alternative of a recess); Bryant v. Stickley, 215 So.2d 786 (Fla. 2d DCA 1968) (no manifest necessity for mistrial when prosecutor was sent to hospital with bleeding ulcers when trial judge took no testimony to determine how long the prosecutor would be absent). Thus, most district courts of appeal have construed the requirement of manifest necessity to require trial judges to explore alternatives before declaring a mistrial over the objection of a defendant.
We agree with the reasoning of the district courts in Cohens, Perkins, Ostane, and Bryant. The double jeopardy provision of the Florida Constitution requires a trial judge to consider and reject all possible alternatives before declaring a mistrial over the objection of the defendant, and we decide this case under that provision. Art. I, § 9, Fla. Const.
A thorough review of the record in Thomason's case indicates that the trial judge, while clearly well-intentioned, did not discuss alternatives before declaring a mistrial over the objection of the defendant's counsel and the State. The judge did not respond to the prosecutor's request for a two-week continuance, although the request was made twice on the day the mistrial was declared. Similarly, the judge did not respond to the defense counsel's request for a thirty-minute recess so she could locate one of the doctors who could provide the assurances the judge sought about her ability to continue with the trial. Nor did the trial judge call the doctor that the defense counsel said was available by telephone. A number of other possible alternatives also could have been considered by the trial judge, including continuing the trial and monitoring the defense counsel's performance and inquiring as to whether the defendant was interested in representing himself.
Perhaps most significantly, the trial judge ignored the wishes of the defendant, who had the right to have his trial completed by the jury that had been sworn. Both the prosecutor and the defense counsel had to repeatedly urge the court to permit testimony of the defendant before the mistrial *1240 was declared. In response to the prosecutor's questions, Thomason stated:
THE DEFENDANT: First I'd like to state that I'm very confident in [the defense counsel] and I feel that she's done an outstanding job for me.
... .
Upon speaking with [defense counsel] she  we talked about it and if she felt she could carry on. My main concern is also her health and I'm concerned with her health.
She has repeatedly told me that she thinks she can go and do a competent job. So, if she feels that she can, I feel that she can.
... .
If I had any reservations at all, I wouldn't go forward.
The trial judge made no comment on the defendant's statements, but instead immediately began discussing why he intended to declare a mistrial.
By failing to consider and reject all possible alternatives to a mistrial, including a continuance, the trial judge did not meet the requirement of manifest necessity and double jeopardy barred retrial. Art. I, § 9, Fla. Const.; Jorn; Perez. We agree with the opinion of Judge Farmer in the court below, who stated:
To put it directly, the correct legal principle is that a trial judge may not declare a mistrial  free of double jeopardy consequences  on the basis of an alleged incapacity of defendant's counsel so near the end of the case where defense counsel is present in the courtroom asserting the ability to proceed, and both the State and the defendant expressly agree on the record that counsel is capable and should proceed. The only exception should be where the record demonstrates without contradiction that the alleged incapacity is objectively verifiable. The alleged inability to proceed may not be based solely, or even substantially, on the subjective impressions of the trial judge, and it must be such that it cannot be cured or avoided by another alternative. The Perez standard cannot properly be applied to abort a criminal trial over the collective objection of everyone, where the "disabled" lawyer is in the courtroom proclaiming the readiness to proceed and none of the alternatives to a mistrial were considered or tried.
Thomason, 594 So.2d at 312, 317-18 (Farmer, J., dissenting).
As noted earlier, the wishes of the defendant to continue the trial must control when manifest necessity has not been demonstrated, Dinitz; Jorn, and doubts about whether the mistrial declaration was appropriate should be resolved in favor of the liberty of the citizen. Downum. In this case, because the judge failed to consider and reject alternatives, manifest necessity did not exist. The defendant strongly expressed his desire to continue the trial. Thus, the trial judge erred in declaring a mistrial.
For the reasons expressed, we quash the decision of the district court and remand with directions to reverse the convictions and order petitioner discharged.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Art. V, § 3(b)(4), Fla. Const.
[2] In the stipulated facts agreed to by the parties, it was noted that the court witness apparently was unaware of the circumstances surrounding the defense counsel's failure to realize that her client was in the courtroom. Before the beginning of the proceedings that morning, the defense counsel noticed that her client was not present and asked that he be brought in. She then left the courtroom for a few moments in an effort to obtain the medical assurances requested by the court and did not realize upon her return that the defendant had been brought in and was sitting behind her.
[3] Justice Story's statement of the "manifest necessity" standard has been repeatedly quoted:

We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes;... . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office.
United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).