WEBSTER, Judge.
Petitioner seeks a writ of prohibition to prevent a retrial on charges of robbery and aggravated battery following the declaration of a mistrial by the trial court, on the state’s motion and over his objection, during his first trial. He argues that, because no “manifest necessity” occasioned the declaration of a mistrial, retrial is barred by the double jeopardy clauses of the state and federal constitutions. We agree and, accordingly, grant the petition.
The relevant facts are not in dispute. A jury was selected and sworn on a Monday, and the ease was continued until Thursday, for trial. On Thursday morning, one of the jurors selected to hear the case did not appear. The trial court asked the attorneys if they objected to substituting the alternate for the missing juror. Petitioner’s attorney had no objection. The prosecutor did “renew” an unspecified “earlier objection” that he had made during jury selection. However, it appears that the objection had related to the prosecutor’s unsuccessful attempts to strike the missing juror for cause, and peremptorily. Moreover, it further appears that the prosecutor subsequently accepted the panel, including the alternate. The trial court overruled the objection.
During his opening statement, the prosecutor mentioned by name a minor witness. Following the conclusion of the prosecutor’s opening statement, petitioner’s attorney objected to the mention of this witness’ name on the ground that the prosecutor was aware that the witness had died several months earlier. The trial court overruled this objection, as well.
The prosecutor then told the trial court that he had just learned that one of his witnesses needed to leave because her husband had just been taken to the hospital. The witness explained that her husband had *752 cancer, and that he had been scheduled for a chemotherapy treatment that morning, in his doctor’s office. She said that she had just learned that her husband had been transported from the doctor’s office to the hospital because his “[cjaleium level went up, and it affects the kidneys.” The prosecutor requested a continuance, and petitioner’s attorney objected. The witness asked if “there [was] any way [she] could just testify and get out?” Initially, she indicated that she was unwilling to “wait for 30 minutes.” However, she then said, “I’ll just stay. It’s all right.” For reasons that are not clear from the record, the trial court then granted the prosecutor’s motion for a continuance, and told the witness that she could “leave immediately.” The trial court and the prosecutor then began discussing the possibility of trying the case some time within the following week, before the same jury. Petitioner’s attorney objected, noting that they were “prepared to go forward,” and that it would be unfair to her client, who had been incarcerated pending trial for nearly 11 months, to delay the trial further. Moreover, it soon became apparent that the schedules of the trial court and the attorneys would not accommodate a continuance to any other date during the remainder of the trial term.
The trial court then asked what the testimony of the witness who had been excused would have been. The prosecutor responded that the witness would have testified that she was standing in her front yard, when she saw a yellow van go by with what appeared to be a black man and a white woman struggling inside. (Petitioner is a black male, and the victim is a white male, with very long hair.) The witness then telephoned 911, and reported what she had seen. Petitioner’s attorney represented that the witness was unable to identify petitioner as the perpetrator, and the prosecutor did not dispute that representation. The prosecutor said that essentially all of what the witness would have testified about was recorded on the 911 tape, which could be played for the jury, in place of the witness’ testimony.
At this point, petitioner’s attorney requested a recess to speak with her client. Following the recess, petitioner told the trial court that he wanted to go forward that day, and that, in order to do so, he was willing to agree to the prosecutor’s suggestion that the 911 tape be played for the jury. The prosecutor again indicated that he was willing to go forward, using the 911 tape instead of the witness’ testimony. However, he asked that the trial court give some sort of instruction before the tape was played, explaining that the witness was unavailable. Petitioner’s attorney objected to any prefatory instruction, and the trial court sustained the objection, saying that to give such an instruction would “call[] attention to [the witness], and perhaps can engender some sympathy.” At that point, the prosecutor “ask[ed] that the Court declare a mistrial.” Without further discussion, and over the objection of petitioner’s attorney, the trial court granted the motion, declared a mistrial and discharged the jury. It announced that it was doing so “because of the cumulative domino effect ... of various events that happened” that morning — i.e., because (1) a juror had failed to appear, requiring substitution of the alternate; (2) the prosecutor mentioned by name in opening statement a witness whom the prosecutor knew was deceased; and (3) a witness had been released so that she might go to the hospital to be with her husband.
Petitioner filed a motion to quash the information, and to dismiss, on double jeopardy grounds. That motion was heard before a different judge, and denied, following which the instant petition was filed.
The Fifth Amendment to the United States Constitution states that no “person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.” Article I, section 9, of the Florida Constitution is to the same effect. It is undisputed that jeopardy had attached before the trial court granted the state’s motion for a mistrial. Thomason v. State, 620 So.2d 1234, 1236 (Fla.1993) (“Jeopardy attaches in a criminal proceeding when the jury is impaneled and sworn”). Because “a defendant has a “valued right’ to have his or her trial completed by a particular tribunal,” when a mistrial is granted over a defendant’s objection, “[t]he State must demonstrate ‘manifest necessity1 for the mistrial.” Id. at 1237 (citations omitted). *753 This has been characterized as “a heavy burden.” Id. Moreover, all “doubts about whether the mistrial declaration was appropriate should be resolved in favor of the liberty of the [defendant].” Id. at 1240.
We have said that “[m]anifest necessity arises because of some misfortune which, although the fault of neither party, renders continuation of the trial impossible.” Cohens v. Elwell, 600 So.2d 1224, 1225 (Fla. 1st DCA 1992). “Whether manifest necessity exists is a fact-intensive inquiry,” requiring a review of the entire record. E.g., United States v. Chica, 14 F.3d 1527, 1531 (11th Cir.1994).
Having carefully reviewed what transpired before the trial court granted the state’s motion for a mistrial, we conclude that no “manifest necessity” existed for the mistrial. We sympathize with the situation in which the trial court found itself. However, we are unable to say that what occurred prior to the declaration of a mistrial, viewed either in isolation or in conjunction, was sufficient to “render[] continuation of the trial impossible.”
The absence of one of the six jurors selected to try the ease did not “render[ ] continuation of the trial impossible” because an alternate had been chosen for just such an eventuality. Moreover, petitioner had no objection to use of the alternate juror. See, e.g., Perkins v. Graziano, 608 So.2d 532 (Fla. 5th DCA 1992) (retrial prohibited following declaration of mistrial when juror failed to appear for trial, because “manifest necessity” not present). We are, similarly, unable to perceive how the prosecutor’s mention during opening statement of the name of a minor witness who had died several months earlier might conceivably “render[ ] continuation of the trial impossible.” Finally, the fact that the trial court had excused the state witness over petitioner’s objection did not make a mistrial a “manifest necessity.” See, e.g., Cohens v. Elwell, 600 So.2d 1224, 1225-26 (Fla. 1st DCA 1992) (stating that, even when a mistrial is declared because of the unavailability of a “critical” state witness, reviewing court should apply a “ ‘strict scrutiny’ test” to determine whether “manifest necessity” existed).
It is not clear to us why the trial court excused the witness in the first place, given her statement that “[she would] just stay. It’s all right.” However, even after the witness had been excused, there was nothing to prevent the trial from continuing on that day. The prosecutor represented that essentially all of what the witness would have testified about was recorded on the 911 tape. He suggested that the tape be played for the jury, in place of the witness’ testimony. Moreover, after he had had his options explained to him by his attorney, petitioner stated that he wanted to go forward with the trial, and that he was willing to agree to the prosecutor’s suggestion that the 911 tape be played for the jury.
In the absence of any “manifest necessity” for the declaration of a mistrial at the prosecutor’s request, and over petitioner’s objection, petitioner’s desire to proceed with the trial should have been honored. Thomason v. State, 620 So.2d 1234, 1240 (Fla.1993). Because a mistrial was declared over petitioner’s objection, and for legally insufficient reasons, another trial on the same charges would violate petitioner’s right not to be twice placed in jeopardy for the same offenses. State ex rel. Williams v. Grayson, 90 So.2d 710 (Fla.1956). Accordingly, we grant the petition for a writ of prohibition, and direct the trial court to discharge petitioner.
BARFIELD, C.J. and ERVIN, J., concur.