PER CURIAM.
After the jury ■ had been sworn, the opening statements had been delivered, and the presentation of evidence had commenced in a felony prosecution, the trial court on its own motion declared a mistrial because of the temporary unavailability of a juror. The trial court failed to explore less drastic resolutions to this dilemma, and manifest necessity thus did not require the employment of the extreme measure of a mistrial. Accordingly, we grant Jose Rodriguez’s petition for writ of prohibition and order him discharged.
On September 14, 1998, a jury was selected, and, in a decision the trial court later characterized as a gamble which it lost, no alternate jurors were-picked. By the close of court business that day, a sworn jury had heard opening statements and the testimony of one State witness. The following day juror Mrs. Johnston failed to appear, and her husband reported to the trial judge that she was ill and that it was uncertain when, or even whether, she would be able to return to jury duty. After a lengthy discussion among the trial judge and the parties, the proceedings were recessed until the next day, Wednesday, September 16.
That day Mrs. Johnston was again absent, and the trial judge had come into possession of a note apparently signed by a Dr. Graves explaining that he had examined the missing juror on September 15, and that due to gastrointestinal difficulties she would be unable to fulfill her obli *539 gations on that date and the following day, September 16, the date the doctor’s note was discussed in court. We have carefully reviewed the record of the proceedings of September 15 and 16, and the only additional information available to the trial court and the parties about the juror’s condition derived from some vague comments her husband had apparently made by telephone to the judge on September 15 which suggested that the unpleasant nature of the court proceedings may also have contributed to her decision not to attend the proceedings on September 15.
It was in this posture on September 16 that the trial court and the parties discussed ways to salvage the trial. Rodriguez’s attorney objected to the mistrial the trial judge seemed to be considering, and he expressed a willingness to have the case continued for as much as two weeks. He adopted his arguments from the previous day, in which he urged the trial court to investigate further, and suggested arranging for, among other things, dispatching a deputy to the juror’s home to speak with and observe her, in order to determine the likelihood that the full jury could be reconstituted within a reasonable time. In spite of defense counsel’s accurate recitation of the trial court’s obligations, the trial judge declared a mistrial, and in so doing made a finding that Mrs. Johnston would be unavailable for the balance of the week.[1] The State expressed its reluctance to move for a mistrial, citing double jeopardy concerns, but made no effort to dissuade the trial court from declaring one on its own motion. This prosecutorial oversight and the trial court’s misunderstanding of its obligation to exhaust less onerous alternatives to mistrial combined to deprive the State of Florida of an opportunity to test its evidence against Rodriguez to a jury of his peers.
 The Double Jeopardy Clauses of the U.S. and Florida Constitutions impose upon the State a heavy burden to exhaust less drastic alternatives before declaring a mistrial over the defendant’s objection during a criminal trial, and all doubts about whether the mistrial was appropriate must be resolved in favor of the liberty of the citizen. See Thomason v. State, 620 So.2d 1234, 1237 (Fla.1993). For over one hundred fifty years this country’s jurisprudence has demanded that “manifest necessity” be demonstrated before resort to mistrial. 620 So.2d at 1237. Thoma-son explains that evaluation of available alternatives to mistrial, including a continuance, are required. In this case there was a very brief discussion in which the trial court referred to its schedule as “absolutely jammed up,” and one each of the prosecution and defense teams mentioned vacation plans over a month away. These obstacles do not satisfy the trial court’s constitutional responsibility which requires Rodriguez to be placed in jeopardy but once for the same offense. Indeed, our record is bereft of any indication that the trial could not have been reconvened the following day, Thursday, September 17.
Florida’s decisional law from before and since Thomason unanimously supports our holding that manifest necessity was not established before the declaration of this mistrial, and that as a consequence retrial is barred. See Rodriguez v. State, 23 Fla. L. Weekly D2217, 719 So.2d 1215 (Fla. 2d DCA 1998); Nobles v. Beauchamp, 686 So.2d 750 (Fla. 1st DCA 1997); C.A.K. v. State, 661 So.2d 365 (Fla. 2d DCA 1995); Cohens v. Elwell, 600 So.2d 1224 (Fla. 1st DCA 1992); Perkins v. Graziano, 608 So.2d 532 (Fla. 5th DCA 1992).
Accordingly, Thomason and the foregoing authority require us to grant the peti *540 tion for writ of prohibition and to order Rodriguez discharged.
THREADGILL, A.C.J., and BLUE and GREEN, JJ., Concur.

. We observe nothing in the record to substantiate this determination that the juror’s condition precluded her return during the balance of the week. This finding may be somehow associated with the trial judge’s articulated determination to relinquish the remaining jurors from duty by the end of the week in any event, citing an administrative order which Rodriguez describes as unidentified and which he was unable to locate in an independent investigation.