SORONDO, J.
This case is before us on a Petition for Writ of Prohibition filed by Armando Qui-ñones, defendant, after the declaration of a mistrial on the motion of the state in the midst of trial and over defendant’s objection, Defendant challenges the trial court’s finding of a manifest necessity for the mistrial and now seeks to prohibit retrial on double jeopardy, grounds. For the reasons which follow we deny the petition.
The facts of the underlying case are irrelevant to our consideration, we mention only that the defendant was charged by information with aggravated battery for the very serious slashing of the alleged victim with a knife. The defendant claimed that he acted in self-defense.
After several days of trial, the state moved for a mistrial arguing two grounds. First, defense counsel had repeatedly violated the court’s pre-trial order in limine forbidding the defense from telling the jury that the alleged victim was incarcerated and otherwise unavailable.[1] Second, *1167 defense counsel had produced a knife during his case-in-chief which defendant testified was the knife he used to stab the alleged victim in self-defense. The judge granted the state’s motion finding that defense counsel, Alex Michaels’, misconduct during trial was so egregious that neither the state nor the defendant could receive a fair trial. Specifically the judge said:
The Court will come to order. Mr. [Prosecutor], you [sic] motion for mistrial based on manifest necessity is hereby granted on the following grounds: The Court finds that at this point it is impossible for either the defendant or the State in this case to receive a fair trial. This Court, and God knows, has labored and labored in this case to try to avoid the type of the result that has happened here.
* * *
I feel that the conduct of the defense attorney in the case has become such that it has made a mockery of this system and made a mockery of this Court.
* * *
Mr. Michaels has consistently disobeyed the rulings of this Court, in which he had asked questions after objections being sustained, causing this jury at this point to be unable to render a just verdict either for the State or for the defense. Specifically, items of directing comments, after warnings by the Court on numerous occasions, personal comments to the agents of the State, who I find acted in this case with the utmost ethical behaviors, both [prosecutors].
Ms. [Prosecutor] was called by a demeaning name during the course of the trial. Mr. [Prosecutor] has been called stupid and incompetent.
This Court has found discovery violations that have occurred, has found those discovery violations to be willful, intentional and prejudicial to the State. Based on all these grounds, the motion is granted.
(Emphasis added). The record before us contains ample evidence to support the trial judge’s factual conclusions, and to support his finding of a manifest necessity for the declaration of a mistrial over the defendant’s objection.[2]
During the course of what should have been a simple case, defense counsel achieved unprecedented levels of attorney misconduct. Indeed, it is arguable that his intent was not to try the case at all but, rather, to sabotage it. Counsel’s misconduct is best addressed as presented by the state in its motion for mistrial: first, repeated disobedience of the trial court’s orders, and second, the suppression of physical evidence. His misbehavior unquestionably had a significant impact on the jury.
Defense counsel’s disregard for the court’s orders was not only unethical but contumacious. During the course of the trial, defense counsel directly and repeatedly ignored the court’s ruling that no mention was to be made of the fact that the victim was incarcerated and otherwise *1168 unavailable. He also repeatedly ignored evidentiary rulings, repeating comments to which objections had been sustained. In opening statement alone the state objected six times, each time the objection was sustained — each time the ruling was ignored. On numerous occasions counsel made speaking objections which contained improper and prejudicial editorials on the evidence being presented, and his personal, unsubstantiated, suspicions concerning the prosecutors’ intent in presenting it. Many of these were made in the presence of the jury. This type of misconduct was not the exception to counsel’s behavior, it was the rule.
Along the same line, on more than one occasion, the judge warned counsel to lower the volume of his voice while arguing matters at side bar. Counsel again refused to obey a direct order from the court. At one point, the bailiff, who was seated at the rear of the courtroom by the entrance, felt compelled to approach the bench and warn the judge that he could hear defense counsel’s side bar argument from the back of the room. On another occasion, the bailiff alerted the court and counsel that he had been approached by jurors who told him that they could hear the arguments being made in the courtroom when they were in the jury room. We are convinced by the record that defense counsel was purposely raising his voice' so as to communicate otherwise impermissible matters to the jury.
Although not at the center of our analysis on the issue presented, counsel’s shameful disrespect for the trial court did not end at ignoring evidentiary rulings. He continuously argued with the court well after the court had heard argument and ruled. On more than one occasion counsel went so far as to tell the judge that his rulings were “wrong” and “unfair,” gratuitous comments which did not advance legal arguments and could only have been intended to embarrass the court. At one point, counsel told the court that the trial was a “mockery” and “not a real trial.” On another occasion he referred to the státe’s witnesses as “clowns” and moved to dismiss the case as “a joke.” Additionally, many arguments were laced with sarcasm clearly intended to mock the trial judge’s rulings and instructions.
During trial, although defense counsel was repeatedly ordered not to interrupt the prosecutors while they were addressing the ■ court, he repeatedly interrupted them as well as the judge himself. He was told by the court that he was being disrespectful to the prosecutors and was told to stop that behavior, he ignored this order as well. At one point, the judge reprimanded him for referring to one of the prosecutors as “this lady,” and told him to address her by name. Counsel refused, saying that he could not “bring [himjself” to do so.
As the trial court observed, defense counsel was grossly disrespectful to opposing counsel. He repeatedly interrupted their arguments, on one occasion by laughing at them as they were trying to argue their position to the court.[3] During the course of the trial he falsely accused the prosecutors of misconduct, called them “liars,” “incompetents,” accused them of “sleaziness,” and, at one point, actually told them to “shut up” as they were arguing their position to the court. Additionally, there were numerous sarcastic remarks directed at them.[4]
The state’s second argument in support of their motion for mistrial was defense counsel’s suppression of critical evidence. Apparently determined to violate as many ethical rules as possible, during the direct examination of his client, defense counsel reached into his pocket and produced a knife which his client identified as the knife he used to defend himself when he *1169 was attacked by the alleged victim. The state immediately objected, arguing that counsel had chosen to participate in discovery and accordingly had an obligation to provide such evidence before trial. The state further argued prejudice because the charge of aggravated battery was predicated on a knife attack which resulted in the savage slashing of the alleged victim.[5] The knife defense counsel now claimed was the weapon involved, was a pocket knife with a one inch blade, hardly the weapon one would expect to cause so much damage.
LEGAL ANALYSIS
In Thomason v. State, 620 So.2d 1234, 1237 (Fla.1993), the Florida Supreme Court articulated the following general principles:
Because the right not to be subjected to double jeopardy is so important and because it is frustrated when a trial ends before a verdict is reached, the State bears a heavy burden in justifying a mistrial over the objection of a defendant. ... Doubt about whether the mistrial is appropriate is resolved “in favor of the liberty of the citizen.” ... The State must demonstrate “manifest necessity” for the mistrial, a requirement that has been part of this country’s jurisprudence since 1824_ The manifest necessity standard must be applied on a case-by-case basis and cannot be applied mechanically.
(Emphasis added) (Citations omitted). In Thomason, the trial court declared a mistrial sua sponte, over the objections of the defendant and the state, believing that defense counsel was too ill to proceed with the trial. The Supreme Court concluded that the judge had failed to consider available alternatives, in that case the possibility of granting a brief continuance or proceeding with the trial and monitoring the performance of defense counsel among others, and consequently retrial was barred. See id. at 1239-40.
Defendant relies on Thomason and argues that the trial judge in the present case failed to consider alternatives to the declaration of a mistrial. We disagree. In reaching our decision we have looked at the trial transcript in its entirety and not just the single page of the transcript where the ruling appears. The trial judge had previously availed himself of the only alternative available, a cautionary instruction to the jury. Although we presume that juries will obey such instructions there comes a time where the improprieties become so numerous that such a presumption becomes untenable. See United States v. Spears, 89 F.Supp.2d 891, 896 (W.D.Mich.2000)(Under circumstances similar to those of the present case, the Court stated: “[Djefense counsel’s misconduct consisted of much more than a single arguably improper question. [Counsel’s] misconduct ... was varied in nature and pervaded some seven days of trial. The potential juror bias arising from the cumulative effects of [counsel’s] misconduct was, therefore, not so easily isolated and remedied through a simple corrective instruction.”). A careful reading of this record demonstrates that the trial judge made every effort to avoid the declaration of a mistrial. Aside from the cautionary instructions he gave, the judge demonstrated a level of patience which far exceeds that which is expected of judicial officers. He granted the state’s motion for mistrial only after realizing that counsel’s reprehensible tactics had completely undermined the fairness of the trial.
A case which we find to be more akin to the present one is Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 64 L.Ed.2d 717 (1978). In Washington, the defendant was convicted of murder in 1971. In 1973 the conviction was reversed because the state withheld exculpatory evidence. The case was re-tried in 1975. During opening statement defense counsel told the jury that the case had been previously tried and *1170 that the prosecutor had improperly “suppressed” and “hidden” evidence, and that because of the prosecutor’s misconduct the appellate court had granted a new trial.
After the opening statement, the prosecutor moved for a mistrial which the trial judge ultimately granted. See id., 98 S.Ct. at 828. When the Arizona Supreme Court denied review, defendant sought and obtained habeas corpus relief in the Federal District Court. The Ninth Circuit Court of Appeal affirmed.[6]
In discussing the meaning of the words “manifest necessity” the United States Supreme Court stated:
[T]hose words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge. Indeed, it is manifest that the key word “necessity” cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a “high degree” before concluding that a mistrial is appropriate.
Id., 98 S.Ct. at 882 (footnotes omitted). As pertinent to our analysis the Court went on to say:
[T]he overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge’s evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.
[[Image here]]

Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderlg, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred.

[[Image here]]
There are compelling institutional considerations militating in favor of appellate deference to the trial judge’s evaluation of the significance of possible juror bias. He has seen and heard the jurors during their voir dire examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more ‘conversant with the factors relevant to the determination’ than any reviewing court can possibly be.
Id., 98 S.Ct. at 838-34 (emphasis added)(footnotes and citations omitted). See also United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); Jackson v. State, 226 Ga.App. 256, 485 S.E.2d 832 (1997); People v. Barfield, 288 Ill.App.3d 578, 223 Ill.Dec. 855, 680 N.E.2d 805 (1997); State v. Dragoo, 1996 WL 251831 (Neb.Ct.App.1996); State v. Levison, 1 Neb.App. 1051, 510 N.W.2d 495 (1993); City of Broadview Heights v. Baron, 2000 WL 1060524 (Ohio Ct.App.2000); Commonwealth v. Leister, 712 A.2d 332 (Pa.Super.Ct.1998); State v. Smith, 871 S.W.2d 667 (Tenn.1994); Torres v. State, 614 S.W.2d 436 (Tex.Crim.App.1981). Like the cases cited above, this case presents the very difficult situation where the misconduct of the defendant’s attorney is the catalyst for the manifest necessity to declare a mistrial. Whereas the system contains safeguards to protect the criminal defendant from a prosecutor’s misconduct, to-wit: a mistrial at defendant’s request, and, if necessary the attachment of double jeopardy if the misconduct is intended to goad the defendant into moving for the mistrial in order to gain an advantage for the prosecution, there is no concomitant *1171 remedial measure for defense attorney misconduct — -which does not entail enormous risk — beyond the court’s contempt power and possible professional discipline by the Florida Bar. Accordingly, the criminal defense attorney who is willing to endure the potential penalties presented by these alternatives is capable of undermining the fairness of a jury trial.[7] The law in this area must, therefore, allow trial courts some room to deal with such unscrupulous lawyers. Nevertheless, trial judges must exercise great caution and restraint in finding that a manifest necessity exists to declare a mistrial over a defendant’s objection. We emphasize the words of Mr. Justice Story in the seminal case of United States v. Perez, 22 U.S. 579, 580, 6 L.Ed. 165 (1824):
We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would be otherwise defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstance, and for very plain and obvious causes ...
(Emphasis added).
In the present case, the trial judge saw the jurors’ reactions when defense counsel argued what had been forbidden pre-trial and he was in the best position to perceive the impact that defense counsel’s constant misconduct had on the jury. He was also in the best position to evaluate what impact the knife which counsel had, at best, unethically, and, at worst, illegally suppressed and then improperly displayed in open court and the defendant’s testimony thereon had on the jury.[8] Accordingly, the judge’s decision *1172 that “this jury [was] unable to render a just verdict either for the state or the defense,” is entitled to great deference.[9] We conclude that the judge exercised sound discretion in determining that a manifest necessity existed for the declaration of a mistrial, and that there was no other alternative.
Prohibition denied.

. The alleged victim was incarcerated at the time of trial and had indicated an inclination to assert his right under the Fifth Amendment of the United States Constitution not to incriminate himself if called to testify. (Because'defense counsel doubted the veracity of the prosecutors’ assertion in this regard, during trial, the judge had the alleged victim and his attorney come to the courtroom where *1167 they confirmed that the victim would refuse to testify on Fifth Amendment grounds). After a lengthy pre-trial hearing, the trial judge granted the state's motion in limine and prohibited any mention of the alleged victim’s unavailability or the fact that he was incarcerated. Throughout the trial defense counsel complained about this ruling and repeatedly tried to circumvent it.
Although he was unable to present any case law to support his position, defense counsel believed and strenuously, repeatedly and very loudly argued that the state was legally and ethically obligated to call the alleged victim as a witness during its case-in-chief. The trial judge correctly ruled that he could not tell the state how to try its case but that he would entertain appropriate motions at the conclusion of the state’s case.

. During the course of the trial, defendant repeatedly moved for a mistrial claiming that there was no way he could receive a fair trial given the court’s pre-trial and trial rulings. Needless to say, all of his concerns vanished when the state moved for a mistrial.

. The trial judge reprimanded counsel for the interruption and observed on the record that counsel was laughing.

. This misconduct is particularly significant in light of the jury's communication that they . could clearly hear what was going on in the courtroom from the jury room.

. When the state moved photographs of the alleged victim into evidence, defense counsel objected on the grounds that the pictures gave the impression that they were trying a murder rather than an aggravated battery.

. Both the District and Circuit Courts acknowledged that defense counsel's opening statement was improper.

. The dearth of reported cases on the specific issue of mistrials caused by defense attorney misconduct suggests that most trial courts are reluctant to declare mistrials over defense objections and consequently opt to resolve such problems through the use of their contempt power, allowing the state to suffer the consequences of defense counsel's misconduct. Although this reluctance is understandable, it is hardly fair.

. Our concern on this issue goes beyond the obvious and willful discovery violation, and addresses the question of whether defense counsel actually violated the law by suppressing critical evidence from law enforcement. Section 918.13(1), Florida Statutes (1995), entitled "Tampering with or fabricating physical evidence” reads, in pertinent part, as follows:
No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:
(a) Alter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation ...
(Emphasis added). Counsel admitted that he had been in possession of the knife "from day one,” and for over 18 months. The overwhelming authority in the nation concludes that an attorney may not accept evidence of a crime unless he or she makes the same available to the prosecutor or the investigating law enforcement agency. See Anderson v. State, 297 So.2d 871 (Fla. 2d DC A 1974); see also Clutchette v. Rushen, 770 F.2d 1469 (9th Cir.1985); In re Ryder, 263 F.Supp. 360 (E.D.Va.), affirmed, 381 F.2d 713 (4th Cir.1967); Morrell v. State, 575 P.2d 1200 (Alaska 1978); Hitch v. Pima County Super. Ct., 146 Ariz. 588, 708 P.2d 72 (1985); People v. Lee, 3 Cal.App.3d 514, 83 Cal.Rptr. 715 (1970); People v. Swearingen, 649 P.2d 1102 (Colo.1982); People v. Nash, 418 Mich. 196, 341 N.W.2d 439 (1983); Commonwealth v. Stenhach, 356 Pa.Super. 5, 514 A.2d 114 (1986); Sanford v. State, 21 S.W.3d 337 (Tex.App.2000); State v. Olwell, 64 Wash.2d 828, 394 P.2d 681 (1964); see generally, Jane M. Graffeo, Note, Ethics, Law and Loyalty: The Attorney's Duty to Turn Over Incriminating Physical Evidence, 32 Stan. L.Rev. 977 (1980).
Whether or not the concealment of the weapon used in this alleged crime was itself a crime we leave to the appropriate authority. As concerns counsel’s professional behavior, however, we conclude that failing to reveal the existence of the knife and his intent to introduce it into evidence raises a substantial *1172 likelihood that he violated the provisions of Rule 4-3.4(a) and (c) of the Rules of Professional Conduct, Rules Regulating The Florida Bar.
Canon 3D(2) of the Code of Judicial Conduct requires that "a judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating the Florida Bar shall take appropriate action.” We conclude that the conduct of attorney Alex Michaels in this case raises a substantial likelihood of numerous violations of the above mentioned rules and therefore refer him to the Florida Bar for disciplinary proceedings.

. "The decision of the state trial court that mistrial was a manifest necessity deserves great deference. This is especially true when the grounds for the mistrial relate to jury prejudice, for the trial judge is in a peculiarly good position to observe the jurors, the witnesses and the attorneys in order to evaluate the extent of the prejudice.” Clark v. State, 756 So.2d 244, 246 (Fla. 5th DCA 2000). See also Barnett v. State, 382 So.2d 412 (Fla. 1st DCA 1980).